# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT

OF THE

# STATE OF IDAHO.

(July 2, 1909.)

STATE, Appellant, v. WALTER S. BRUCE, Receiver of the Estate of the Capital State Bank of Idaho, Insolvent, Respondent.

[102 Pac. 831.]

TRUST FUNDS—IDENTITY OF TRUST FUNDS—LIEN ON GENERAL ASSETS OF AN ESTATE FOR TRUST FUNDS.

1. Where the state treasurer deposited state funds in a bank without authority of law, and the bank had notice of the character of the funds and of the relation the depositor sustained to the funds, and the trust funds were mixed and commingled with the general assets of the bank and used from day to day in the commingled form promiscuously in the payment of the debts of the bank and in the purchase of paper and securities, and the bank thereafter suspended payment and went into the hands of a receiver, and at the time the receiver took charge there was not enough cash on hand to pay the trust account, the lien of the state will attach to all the assets of the bank as a preferred claim for the payment of the trust funds.

2. Trust funds may be followed into the trustee's estate although no particular property or asset can be identified as having been purchased or acquired by the particular funds, where it appears that the trust fund was mixed and commingled with the general funds and property of the trustee's estate and went into the general assets either in the purchase of paper and securities or in the payment of the debts of the trustee, and in such case the lien of the *cestui que trust* will attach against the entire assets of the trustee's estate for the payment of such claim.

(Syllabus by the court.)

Idaho, Vol. 17—1          (1)

APPEAL from the District Court of the Third Judicial District, for the County of Ada. Hon. Fremont Wood, Judge.

Action by the state of Idaho to establish a trust lien against the state and assets of the Capital State Bank of Idaho, insolvent, and to have its right decreed to be that of a preferred creditor. Judgment in favor of plaintiff to the extent of the cash on hand in the bank at the time it suspended business and against the state as to all other assets. Plaintiff appeals. *Reversed.*

Edwin Snow, for Appellant.

Having traced the state's money into the coffers of the bank, we are entitled to withdraw an equal amount previous to any payment whatever to the general creditors, and this is true irrespective of the fact we cannot trace the state's trust fund of which the bank was trustee into any specific pieces of property or moneys that came into the hands of the receiver. (*State v. Thum,* 6 Ida. 323, 55 Pac. 858; *Bank v. Bunting,* 7 Ida. 27, 59 Pac. 929.)

"If a man mixes trust funds with his, the whole will be treated as trust property except so far as he may be able to distinguish what is his." (*Bank v. Conn. Mut. Ins. Co.,* 104 U. S. 54, 26 L. ed. 693; *Hatchbull v. Hallett,* L. R. 13 Ch. Div. 696; *Frelinghausen v. Nugent,* 36 Fed. 229; *Cox v. Wills,* 49 N. J. Eq. 574, 25 Atl. 938; *Standard Oil Co. v. Hawkins,* 74 Fed. 395, at p. 402, 20 C. C. A. 468, 33 L. R. A. 739; *Massey v. Fisher,* 62 Fed. 958.)

Although the trust fund could not be clearly traced to any particular asset in the hands of the receiver, it was shown to have gone into and been used for the benefit of the estate, and it thereby became a charge upon the entire assets with which it was mingled. (*Meyers v. Board of Education,* 51 Kan. 87, 37 Am. St. 263, 32 Pac. 658; *Peck v. Ellicott,* 30 Kan. 156, 46 Am. Rep. 90, 1 Pac. 499; *Insurance Co. v. Caldwell,* 59 Kan. 156, 52 Pac. 440; *Ind. Dist. v. King,* 80 Iowa, 497, 45 N. W. 908; *Plow Co. v. Lamp,*

80 Iowa, 722, 20 Am. St. 442, 45 N. W. 1049; *Page County v. Rose,* 130 Iowa, 296, 106 N. W. 744, 5 L. R. A., N. S., 886; *Fogg v. Bank,* 80 Miss. 754, 32 So. 385; *Hutchinson v. Le Roy,* 113 Fed. 209, 51 C. C. A. 159; *McLeod v. Evans,* 66 Wis. 401, 57 Am. Rep. 287, 28 N. W. 173, 214; *Francis v. Evans,* 69 Wis. 115, 33 N. W. 93; *Carley v. Graves,* 85 Mich. 483, 24 Am. St. 99, 48 N. W. 710; *Farmers' & M. Nat. Bank v. King,* 57 Pa. 202, 98 Am. Dec. 215.) "Where accounts are to be settled between the parties and the decree contains an order of reference by which the accounts are to be stated in accordance with principles fixed by the decree, such order of reference will not have the effect of rendering the decree interlocutory." (13 Am. & Eng. Ency. 29, and cases cited.)

In every one of the cases cited by respondent where the order requiring an accounting was not held final, it was a case in which the complaint itself called for an accounting. Our petition simply asked for a payment in money. We do not ask for an accounting. We claim a lien upon the entire assets. The court denied our claim but stated the principles upon which we should be relieved, and ordered an accounting for the purpose of carrying out his order, at the same time indicating precisely the principles upon which our relief should be based.

Wyman & Wyman, for Receiver; Cavanah & Blake, for U. S. Nat. Bank of Omaha; Morrison & Pence, for Capital State Bank and U. S. Fidelity & Guaranty Co.

The accounting ordered by the lower court has never been had, nor have any of the moving parties made any effort whatever to get it. The receiver has moved to dismiss the appeal on the ground that the order appealed from was not nor was intended to be by the court making it a final order in the matter. An order is not final which, having decided portions of the questions presented, directs a further hearing upon those undisposed of. (*Mills v. Hoag,* 7 Paige, 18; *Keystone etc. Co. v. Martin,* 132 U. S. 91, 10 Sup. Ct. 32, 33 L. ed. 275; *McGourkey v. Toledo & O. C. R. Co.,* 146 U.

S. 536, 13 Sup. Ct. 170, 36 L. ed. 1079; *Raymond v. Baking Powder Co.,* 76 Fed. 465, 22 C. C. A. 276; *Latta v. Kilbourn,* 150 U. S. 524, 14 Sup. Ct. 201, 37 L. ed. 1169; *McKeown v. Officer,* 127 N. Y. 687, 28 N. E. 401; *Ex parte Crittenden,* 10 Ark. 333; *In re Palmyra,* 10 Wheat. (U. S.) 502, 6 L. ed. 376.) A beneficiary whose fund has been improperly diverted may follow and recover it without regard to the form into which it has been converted, provided it shall not have passed into the hands of innocent purchasers, and that he shall at all times be able to identify it as his specific property or the specific proceeds of his property, and where he cannot do this, he is not permitted to have any preference over general creditors, and where a bank has mingled trust funds with its own money, and paid out for its own purposes from such commingled funds, it will be presumed to have paid from its own money and not from the trust funds. (*Commissioners v. Strawn,* 157 Fed. 49; *Spokane County v. First Nat. Bank,* 68 Fed. 979; *Litchfield v. Ballou,* 114 U. S. 190, 5 Sup. Ct. 820, 29 L. ed. 132; *Peters v. Bain,* 133 U. S. 670, 10 Sup. Ct. 354, 33 L. ed. 696; *Roach v. Caraffa,* 85 Cal. 436, 25 Pac. 22; *Estate of Dutard,* 147 Cal. 253, 81 Pac. 519; *Little v. Chadwick,* 151 Mass. 109, 23 N. E. 1005, 7 L. R. A. 570.) "Trust funds deposited in a bank do not constitute a general lien on assets superior to that of general creditors." (*Hill v. Miles,* 83 Ark. 486, 104 S. W. 198; *Milling Co. v. Skillern,* 73 Ark. 324, 84 S. W. 475; *Shopert v. National Bank,* 41 Ind. App. 474, 83 N. E. 515; *Slater v. Oriental Mills,* 18 R. I. 352, 27 Atl. 443; *Lowe v. Jones,* 192 Mass. 94, 116 Am. St. 225, 78 N. E. 402, 6 L. R. A., N. S., 487; *State v. Foster,* 5 Wyo. 199, 63 Am. St. 47, 38 Pac. 926, 29 L. R. A. 226; *Nonotuck Silk Co. v. Flanders,* 87 Wis. 237, 58 N. W. 383; *Burnham v. Barth,* 89 Wis. 362, 62 N. W. 96; *Englar v. Offutt,* 70 Md. 78, 14 Am. St. 332, 16 Atl. 497; *Goldthwaite v. Ellison,* 99 Ala. 497, 12 So. 812; *Board v. Wilkinson,* 119 Mich. 655, 78 N. W. 893, 44 L. R. A. 493; *Trust Co. v. St. Louis & S. F. Ry. Co.,* 99 Fed. 485.)

The leading case is *In re Hallett's Estate*, L. R. 13 Ch. D. 696, which has been very generally followed by American courts, and it expressly holds the doctrine for which we contend. (*State v. Bank of Commerce*, 54 Neb. 725, 75 N. W. 28; *Massey v. Fisher*, 62 Fed. 958; *In re Mulligan*, 116 Fed. 715; *Nat. Bank v. Campbell Com. Co.*, 77 Fed. 705; *Cavin v. Gleason*, 105 N. Y. 256, 11 N. E. 504; *Arbuckle Bros. v. Kirkpatrick*, 98 Tenn. 221, ·50 Am. St. 854, 39 S. W. 3, 36 L. R. A. 285; *Cushman v. Goodwin*, 95 Me. 354, 50 Atl. 50; *Randolph v. Allen*, 73 Fed. 24, 19 C. C. A. 353; *Parker v. Jones, Admr.*, 67 Ala. 234; *Ellicott v. Kuhl*, 60 N. J. Eq. 333, 46 Atl. 945.) Of the cases cited by counsel, which in anywise support his contention, the greater number have been either overruled or severely criticised. New York, Nebraska, Wisconsin and Michigan have all overruled their previous cases and now support the doctrine for which we contend, while Iowa and Kansas have expressly doubted the law of most of the cases cited by appellant.

## STATEMENT OF FACTS.

On January 20, 1908, the Capital State Bank of Idaho suspended payment, closed its doors and on the following day a receiver was appointed by the district court to take charge of its assets and business. For several months preceding the insolvency of the bank, C. A. Hastings, treasurer of the state of Idaho, had been carrying an account at this bank in the name of "C. A. Hastings, State Treasurer, Collection Account." The account was opened on June 24, 1907, and thereafter fluctuated from time to time by reason of withdrawal of deposits and additional deposits of checks and drafts. On January 20, 1908, the day on which the bank suspended business, there remained due as a balance on the account carried by the state treasurer, the sum of $24,434.44. This was the money of the state of Idaho, and that fact was at all times known to the bank and its officers and is admitted in this case. Soon after the bank suspended payment and the receiver was appointed the state, acting through the attorney general, filed its petition in the receiver-

ship case, praying the district court to make an order directing the receiver to pay to the state the balance due on the account of these various deposits as hereinbefore stated. The case was tried on an agreed statement of facts. That portion of the stipulation of facts necessary or essential for the consideration of this case is as follows:

"1. That Charles A. Hastings is and has been, since the first Monday in January, 1907, the duly elected, qualified and acting state treasurer of the state of Idaho.

"2. That on the 24th day of June, 1907, the said Hastings opened an account with the Capital State Bank, which was carried on the books of the said bank in the name of C. A. Hastings, State Treasurer, Collection Account; and that from day to day he thereafter made deposits on said account and as such state treasurer checked upon and withdrew money from it.

"3. That on the 27th day of June, 1907, there was due on said account $30,334.00; that thereafter the said bank paid large sums of money to said Hastings, as state treasurer, on account of said balance, so that on the 28th day of October, 1907, there was due on said account $8,597.92, and that thereafter the said balance increased until on January 17th, 1908, there was a balance due of $41,228.77, and on January 20, 1908, of $24,434.44.

"4. That the said account occurred by reason of the deposit by the said Hastings with the said bank of large numbers of checks and drafts, and that the said checks and drafts were received by the bank and were credited immediately upon their deposit as cash in the pass-book of the said Hastings, and became immediately subject to the check of the said Hastings, state treasurer. That in the event any of the said collections were unpaid the account of said state treasurer would be charged with said sum.

"5. That the said moneys were public moneys belonging to the state of Idaho, and known by the bank to be such.

"6. That all the said checks and drafts so deposited by the said Hastings as state treasurer were honored by the drawees and the funds from the same were received by the

said bank and mingled with its general funds and went to the increase of the bank's assets at the time the proceeds were received, in the same manner as did all other deposits and cash receipts received by the bank and not otherwise.

"7. That the said sums so deposited by the said state treasurer were not secured by bond or otherwise, and it was understood between the said Hastings and the said bank that no interest was to be paid on the said deposits, and no interest was so paid.

"8. That the said moneys so deposited by the state treasurer were mingled with the other moneys of the bank received by the bank from its depositors and from other sources.

"9. That from the general funds of the bank in which said moneys so deposited by the state treasurer were mingled, loans and investments were made by the bank; that the said loans and investments so made from the general funds of the bank were in the aggregate, at least $62,000.00 between the 29th day of October, 1907, and the 20th day of January, 1908. That it cannot be established that any of the identical money deposited by the state treasurer, as aforesaid, went into the making of any loans or investments, except that all loans and investments at all times after June 24th, 1907, were made according to the general custom of said bank from the general funds of the bank with which the said deposits of said state treasurer were mingled. Nor can it be shown whether or not at the time of the making of any of said loans, or investments, any of the identical moneys so deposited by said state treasurer were actually in said bank.

"10. That the said bank is insolvent in the sense that it has suspended payment and is unable to meet its current demands, but not otherwise, and that the receiver appointed to take charge came into possession at his appointment on January 21st, 1908, of $28,289.06 in cash belonging to the bank. That he has since collected and now has in his possession from the said loans and investments made by the said bank between the 28th day of October, 1907, and the 20th day of January, 1908, the sum of $———, and that

he has collected from the total assets of the bank and now has in his possession, as such receiver, the sum of $168,784.-80, which is in amount more than sufficient to pay the sums demanded as trust funds, and also all expenses of receivership and court costs.

"11. That it is impossible to trace any of the said money in specie, deposited by the said state treasurer, as aforesaid, into the mass of cash that came or has come into the hands of the receiver nor into loans or investments made by the bank, as hereinbefore referred to; nor into any notes or securities coming into his hands, except that the said loans and investments herein referred to were all made from the general fund of the bank into which said deposits were so received as money, and mingled, and the cash which came into the hands of the receiver on his taking charge was the residue of said mingled funds."

Various other petitions were filed asking to have trust funds held by the bank declared preferred claims on the assets of the bank, among them being Ada county, Boise City Independent School District and several others, aggregating upwards of $84,000. The trial court held that the only assets of the bank that could be pursued as trust funds was the amount of cash on hand in the vault at the time the bank closed, to wit, the sum of $28,289.06, and that the state could not pursue any other property or assets of the bank and impress the trust lien on such property. The state insisted that it was entitled to have its preferred claim attach as a lien against all the assets of the bank.

The essential part of the order or judgment appealed from and which affects the appellant reads as follows:

"It is by the court ordered: That the said receiver of the said Capital State Bank of Idaho, Limited, be and he is hereby directed to pay the said petitioners out of the assets in his hands the sum of twenty-eight thousand two hundred and eighty-nine dollars and six cents ($28,289.06), being the amount of cash in the said bank at the time it suspended, and which sum came into the hands of the receiver of said bank, together with the proceeds of any in-

vestment made of trust funds between the 10th day of January, 1908, and the 20th day of January, 1908, both inclusive, and that an accounting be had to determine said sum, if any; that the said petition be granted to that extent and denied to any other or further relief."

AILSHIE, J. (After stating the facts.)—Respondent has moved to dismiss this appeal on the ground that the order or judgment appealed from is not final and is therefore not an appealable order or judgment. The position of the respondent is not tenable. The state came into the receivership case by petition to have a certain claim and lien established and decreed in favor of the state as a prior and preferred lien claim. The court's order or judgment is final as to the subject matter involved in the state's case. It finally determines that the state is not entitled to recover except as against the cash on hand in the bank at the time it suspended business. The additional clause in the decree authorizing an accounting and the state to receive "the proceeds of any investment made of trust funds between the 10th day of January, 1908, and the 20th day of January, 1908, both inclusive," does not limit, qualify or affect the order or judgment in so far as the finality of the same is concerned. In view of paragraph 11 of the stipulation of facts, which was adopted as the finding of facts by the court, this clause in the decree would be meaningless and useless anyway. It is agreed by that stipulation that none of the trust fund was invested in notes or securities, and that none of it can be traced into any special fund or asset of the bank, but that, on the contrary, the entire trust fund went into the general funds of the bank and was used promiscuously and generally in investments and the payment of the debts of the bank the same as the other funds of the bank. The motion to dismiss the appeal is not well taken and is accordingly denied.

The controlling question to be decided in this case is whether the state is entitled to a preferred lien on all the assets of the bank or only upon the cash in the bank at the time its

doors closed to business. Many courts, and perhaps the greater number, passing upon this question, have held with the contention made by the respondent, that the lien can attach only against the cash on hand when the bank suspended payment. But this court, and many of the courts of the country of high standing, have held otherwise, and we believe the soundest reason and most convincing logic of the situation is with the position maintained by the state.

The money deposited by the state treasurer was the property of the state, and the bank knew that fact at all times it was dealing with this fund. It is conceded that it went into the general funds of the bank and was paid out from day to day together with general deposits on the checks of depositors and in the purchase of securities and other assets. No pretense is made by the bank or its receiver that this money was embezzled, stolen or dissipated. It was used in the due course of business as transacted by the bank. It is also conceded that no part of this fund can be traced into any particular securities, paper or assets. The bulk of it was doubtless paid out on depositors' checks during the closing days the bank did business and while it was struggling to maintain its credit and continue in business. We fail to see what difference it can make in point of fact, reason or law whether the money was used in buying bonds, mortgages and other paper to add to the general assets of the bank, or in discharging the debts of the bank. In either event, it adds to or appreciates the body and value of the bank's assets. If the money is used to-day to pay the bank's debts and it suspends business to-morrow, the indebtedness of the bank to-morrow will be just as much less than it would otherwise have been as the amount paid out represents. The assets of the bank are worth more when the bank's debts amount to only $500,000 than when they amount to $600,000. So it was in this case,—the assets of the bank in the hands of the receiver are worth more to the general creditor with the debts reduced in the sum of $60,000 by the disbursement of these trust funds than they would have

been had that amount of debts not been paid before the bank went into insolvency.

Appellant relies on *State v. Thum*, 6 Ida. 323, 55 Pac. 858, and *First National Bank of Pocatello v. Bunting*, 7 Ida. 27, 59 Pac. 929, for a reversal of the judgment of the trial court. In the Thum case, the state treasurer had deposited state funds in the bank of C. Bunting & Co., and the state successfully contended in this court that it had a preferred lien against all the assets of the bank in the hands of the receiver for the payment of the trust account. This court recognized and upheld the prior claim and lien of the state, and ordered that a judgment be entered directing the receiver to pay the state in full before paying any of the general creditors. The Thum case was followed and approved in the subsequent case of *First National Bank v. Bunting*. While the identical question here raised was not considered and discussed in the written opinion, still it was necessary to hold that the claim and lien was preferred against all the assets of the bank, irrespective of the amount of cash on hand when the bank closed, or of the class or character of the assets acquired by the particular fund, for the reason that the amount of cash on hand when the C. Bunting & Co. bank closed was only $5,300, while the preferred liens for trust funds that were established and approved by this court amounted to more than $63,000.

The authorities on this question are numerous, and it would serve no useful purpose to attempt to review, consider or analyze them in this opinion. In addition to the above cases from our own court, we will call attention to one other case, namely, *Meyer v. Board of Education*, 51 Kan. 87, 37 Am. St. 263, 32 Pac. 658. That was a case where the treasurer of a school district had deposited money in a bank without any authority to do so, and the bank thereafter became insolvent, and at the time it went into the hands of a receiver there was not enough cash on hand to pay the amount due the school district. The money could not be traced into any special fund or particular part of the assets. It had apparently been paid out largely on the checks of depositors

in the discharge of the bank's indebtedness. The supreme court of Kansas upheld the claim of the district for a preferred lien on all of the assets of the bank in payment of the trust account. The court, in considering the validity of the claim and the equity doctrine applicable thereto, said:

"The modern doctrine of equity, and the one more in consonance with justice, is that the confusion of trust property so wrongfully converted does not destroy the equity entirely, but that, when the funds are traced into the assets of the unfaithful trustee or one who has knowledge of the character of the funds, they become a charge upon the entire assets with which they are mingled. . . . . It would seem to be immaterial whether the property with which the trust funds were mingled was moneys, or whether it was bills, notes, securities, lands, or other assets. The bank which assigned in this case appears to have been engaged in a general business, and its assets consisted of moneys, securities, and lands; and, as the estate was augmented by the conversion of the trust funds, no reason is seen, under the equitable principle which has been mentioned, why they should not become a charge upon the entire estate."

The court in reviewing the case of *McLeod v. Evans,* 66 Wis. 401, 57 Am. Rep. 287, 28 N. W. 173, and speaking of the facts of that case and the rule applied to it, said:

"It was found that the proceeds of the trust property were used by the trustee either to pay off his debts or to increase his assets, and it was held to be unnecessary to trace the trust fund into any specific property in order to enforce the trust; and that, if it could be traced into the estate of the defaulting agent or trustee, that was sufficient. It was further decided that, whether the trust funds were used to increase the assets or to pay off the debts, in either case it would be for the benefit of the estate; and, having been so used, it was held that a trust attached to the entire estate which came into the hands of the assignee."

*Meyer v. Board of Education,* 51 Kan. 87, 37 Am. St. 263, 32 Pac. 658, has been subsequently cited with approval in the following cases: *Rose v. Douglas Tp.,* 52 Kan. 451,

39 Am. St. 354, 34 Pac. 1046; *City of Clay Center v. Meyer,* 52 Kan. 363, 35 Pac. 25; *Hubbard v. Almo Irr. Co.,* 53 Kan. 637, 36 Pac. 1053, 37 Pac. 625; *City of Larned v. Jordan,* 55 Kan. 124, 39 Pac. 1030; *Ryan v. Phillips,* 3 Kan. App. 704, 44 Pac. 909; *Burroughs v. Johntz,* 57 Kan. 778, 48 Pac. 27; *Hazeltine v. McAfee,* 5 Kan. App. 119, 48 Pac. 886; *Travelers' Ins. Co. v. Caldwell,* 59 Kan. 156, 52 Pac. 440; *Kansas State Bank v. First State Bank,* 9 Kan. App. 839, 61 Pac. 868; *Kansas State Bank v. First State Bank of Marion,* 62 Kan. 788, 64 Pac. 634; *Reeves v. Pierce,* 64 Kan. 502, 67 Pac. 1109; *Cherry v. Territory,* 17 Okl. 221, 89 Pac. 192, 8 L. R. A., N. S., 1254; *Capital National Bank v. Coldwater National Bank,* 49 Neb. 786, 59 Am. St. 572, 69 N. W. 115; *State v. Midland State Bank,* 51 Neb. 1, 66 Am. St. 484, 71 N. W. 1101; *Page Co. v. Rose,* 130 Iowa, 296, 106 N. W. 744, 5 L. R. A., N. S., 886.

It has also been disapproved and criticised in the following cases: *Bank of Commrs. v. Security Trust Co.,* 70 N. H. 536, 49 Atl. 113; *Spokane Co. v. First National Bank,* 68 Fed. 979, 16 C. C. A. 81; *Newformers' Bank Trustees v. Cockerell* (Ky.), 51 S. W. 2; *State v. Bank of Commerce,* 54 Neb. 725, 75 N. W. 28; *Lowe v. Jones,* 192 Mass. 94, 116 Am. St. 225, 78 N. E. 402, 6 L. R. A., N. S., 487; *City of Lincoln v. Morrison,* 64 Neb. 822, 90 N. W. 905.

Notwithstanding the criticism of the Meyer case from courts of the highest standing, the reasons given by the writer of that opinion appeal to us as sound, and the rule there adopted is in harmony with our view of the equities of this case and is in accord with the rule this court has heretofore announced in the Thum and Bunting cases. We would note this exception to that rule which we believe should be observed: Had the receiver shown that the trust fund had been embezzled or stolen or dissipated by unfaithful officers of the bank or others, prior to the suspension of business, and that the bank received no benefit therefrom, either by way of swelling its assets or payment of its debts, then the trust lien should not attach to the general assets of the bank. That is not the situation, however, in this case.

The order is reversed and the cause remanded, with directions that judgment be entered decreeing the state a preferred lien over general creditors of the bank. Costs in favor of appellant.

Sullivan, C. J., and Stewart, J., concur.