FARMERS SAVINGS BANK et al, Appellants, v. BERGIN
et al, Respondents.

(216 N. W. 597.)

(File No. 6459. Opinion filed November 8, 1927.)

*Bielski & Elliott* and *P. H. McDowell,* all of Sioux Falls, and *Roy E. Willy,* of Platte, for Appellants.

*Cherry, Davenport & Braithwaite,* of Sioux Falls, for Respondents.

BURCH, J. This action is brought by the superintendent of banks to set aside certain transfers of assets of the Farmers' Savings Bank, a banking corporation, of Sherman, S. D., made by the officers of said bank to defendants.

At the time of the commencement of this action, the said bank was insolvent and in the hands of the superintendent of banks for liquidation. The defendants Dorothy C. Nelson and G. A. Esten-

sen are and were during all times herein mentioned guardians of the estate of the other defendants, Devona, Clementine, and Dorothy Bergin, minors. Estensen was also an officer and in active charge of the bank. By mutual consent, Estensen was active in the management of the estate of the minors, while Dorothy Nelson, the mother, took active charge of the care and custody of the persons of the minors. The estate consisted of about $7,700 in money, which Estensen in 1921 deposited in the bank on a time certificate of deposit maturing in six months. When this certificate matured, the interest was deposited to the account of Mrs. Nelson and a new certificate issued for the principal. Successive certificates were issued and handled in the same manner for several years. Early in 1924, because of unfavorable banking conditions, Mrs. Nelson objected to continuing the deposit and suggested that the money be invested in a farm mortgage or other safe security, but nothing was done by Estensen to carry out this suggestion, and the deposit was carried on in the same manner. In the fore part of September, 1925, Mrs. Nelson definitely told Estensen that when the existing certificate matured she would not consent to a renewal thereof, and that she would insist that on that date the certificate should be paid and the proceeds invested in a suitable mortgage. Nevertheless Estensen ignored Mrs. Nelson's demands and issued another certificate maturing March 26, 1926. The bank at that time was in failing circumstances, and without reviewing the evidence it is sufficient to say that it shows the conduct of Estensen was wrongful and in breach of his trust, and that the bank through him had full knowledge of the wrongful character of the transaction to such extent that by the very fact of receiving such deposit under the circumstances it became a trustee thereof ex maleficio. On the day the bank closed its doors and went into the hands of the superintendent for liquidation, but before closing its doors and while open and doing business, the certificate, although not due by its terms, was surrendered to the bank, and in exchange therefor the securities sought to be recovered in this action were transferred to defendants. The trial court found for defendants, and plaintiff appeals from the judgment rendered and an order denying a new trial.

There are but two questions that need be noticed: First. Can the transfer of the securities be sustained by virtue of the trust

arising from the fraudulent character of the deposit? Second. If it cannot, can it be sustained on the ground that the transaction whereby the certificate of deposit was exchanged for the securities was valid and not in fraud of general creditors?

 The original deposit was of money made several years prior to the transaction involved. It was continued by the issuance of new certificates from time to time. By the transaction complained of, the specific fund was not restored to the cestui que trust, nor is there any claim that the deposited funds went into the securities transferred. In other words, there is no claim that the specific trust property nor property into which it could be traced was restored to the rightful owners by the trustee. While some state courts have held that it is not necessary to trace the specific trust property, and that it is sufficient to trace it into the assets of the bank, thereby augmenting its assets (Peak v. Ellicott, 30 Kan. 156, 1 P. 499, 46 Am. Rep. 90; Yellowstone County v. Bank, 46 Mont. 439, 128 P. 596; State v. Bruce, 17 Idaho, 1, 102 P. 831, L. R. A. 1916C, 1, 134 Am. St. Rep. 245; McLeod v. Evans, 66 Wis. 410, 28 N. W. 173.), that is not the law of this state, as announced in Birch v. International State Bank, 50 S. D. 60, 208 N. W. 167. To entitle one to a preference because of a trust relation the trust property must be traced either in its original form or into specific assets to be recovered. To aid in tracing commingled funds, such as money, a fiction may be indulged whereby it will be presumed the money remaining in the hands of the bank contains the trust fund, but that is as far as this court has gone. Under the authority of Birch v. International State Bank, supra, the transfer here involved cannot be sustained on the ground of a trust relation. See, also, Clinton M. & M. Co. v. Trust Co., 35 S. D. 253, 151 N. W. 998; Empire State Surety Co. v. Carroll County, 194 F. 593, 114 C. C. A. 435; Board of Comm. v. Strawn, 157 F. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100; Macy v. Roedenbeck (C. C. A.), 227 F. 346, L. R. A. 1916C, 12.

 The second question pertains to the bona fides of the transaction involved in the transfer of the securities sought to be recovered. It is well settled in this state that an insolvent corporation may not prefer its creditors, but that upon insolvency the assets of such corporation become a trust fund for the payment of its creditors on an equal pro rata basis. Bank v. Williams, 48

S. D. 529, 205 N. W. 221; City of Sturgis v. Meade County Bank, 38 S. D. 317, 161 N. W. 327; Furber v. Williams Flour Co., 21 S. D. 228, 111 N. W. 548, 8 L. R. A. (N. S.) 1259, 15 Ann. Cas. 1216; section 9059, R. C. 1919. Respondents contend that, although this be true as an abstract principle, in its application there must necessarily be a term of insolvency during which the rule cannot be applied; that transactions with corporations, insolvent in that their liabilities exceed their assets, cannot be set aside as fraudulent or as an unlawful preference, while the officers are honestly conducting the business in due course and regular manner with intent to continue as a going concern and with no expectation of closing because of such insolvency, and that a transaction is valid and cannot be set aside as fraudulent unless the corporation had actually suspended business, or the contracting parties acted in contemplation of insolvency with the object of effecting a preference.

We do not think it necessary in this case to draw any close lines of demarcation between when a transaction with an insolvent corporation may and when it may not be fraudulent. The only fair inference from the facts shown by the record in this case is that an unlawful preference resulted from the transaction and the conditions were such that the contracting parties must have known that such would, in all probability, be the result. They departed from the usual manner of paying certificates of deposit in money, and nothing indicates that the certificate could have been paid in money in the usual manner. On the contrary, respondents in their brief say that, after a consultation between Mrs. Nelson and her attorney on November 1st, Estensen was notified that Mrs. Nelson challenged the validity and propriety of what he had done, and would demand the money at the opening of the bank the next morning. After calling another officer of the bank, E. V. Estensen, into the conference, a "compromise" was suggested "whereby the guardianship would purchase from the bank securities to the amount of the money, this to save impairment of the bank's reserve." Apparently money in payment was demanded and the transaction that followed was the result of a compromise. November 1st was Sunday. Mrs. Nelson and her attorney drove to Sherman on that day and had a conversation with G. A. Estensen in which the demand was made. The same evening (Sunday) the

Estensens came to Sioux Falls, and the compromise above referred to was made. The next morning (Monday) Mrs. Nelson's attorney went over to Sherman with the papers and closed the transaction. The haste in making the withdrawal, apparent concern of Mrs. Nelson over the deposit, and all the circumstances surrounding the transaction, indicate that it was made in fear of the closing of the bank, if not in actual contemplation of insolvency. All this negatives the suggestion made by respondent's counsel in his oral argument that the purchase of the securities was a good-faith transaction for the purpose of making an ordinary investment of the money of the estate in attractive securities that happened to belong to the bank.

For the foregoing reasons, the judgment and order appealed from are reversed, and the cause remanded for further proceedings in harmony therewith.

CAMPBELL, P. J., and SHERWOOD, J., concur.

BROWN, J., not participating.

POLLEY, J. (dissenting). I am not able to agree with the majority of the court in this case. In holding that the money belonging to the minor children of Mrs. Nelson is a part of the assets of the bank to be distributed among the general creditors of the bank, the court has gone further in support of the doctrine that the assets of an insolvent bank constitute a trust fund for the benefit of the creditors than it has ever gone before, and further, I think, than any other court has ever gone. The placing of this money in the bank by Estensen, knowing the condition of the bank, as he did, was wrongful from the beginning. As to the owners of the money who had no voice in its disposition it was fraudulent. It was pointed out by this court in City of Sturgis v. Meade County Bank, 38 S. D. 317, 161 N. W. 327, that money wrongfully or unlawfully deposited in a bank did not become a part of the fund for the benefit of the general creditors when the bank became insolvent. This is the general rule applicable to this class of deposits. Yellowstone County v. Bank, 46 Mont. 439, 128 P. 596; State v. Bruce, 17 Idaho, 1, 102 P. 831, L. R. A. 1916C, 1, 134 Am. St. Rep. 245.

In view of the trust fund doctrine now firmly established in this state, when a person deposits his money in a bank, he does so with the understanding that, if the bank should become insolvent

while his money is still on deposit, it will be applied ratably in paying off the creditors of the bank. By making the deposit, he impliedly consents that this may be done. But, when a man's money comes unlawfully into the possession of the bank, then no such consent is implied, and the creditors of the bank have no right to have such money applied to the payment of their debts.

In this case the creditors of the bank are creditors because they have voluntarily put something in the bank in some form. What they put in now constitutes the fund that is to be distributed among them. But Mrs. Nelson's minor children did not put anything into the bank, and their money that was unlawfully acquired by the bank never became a part of the fund for the payment of creditors, and such fund was in no wise depleted when the money, or its equivalent, belonging to Mrs. Nelson's children, was returned to them.

The majority opinion stresses the fact that Mrs. Nelson and her attorney went to Sherman on Sunday to secure a settlement with Estensen, and that both Mrs. Nelson and Estensen went to Sioux Falls that same evening. I am unable to see how this has any bearing whatever on the case. She did merely what she would have done long before, if she had been properly advised. There is nothing to show that she learned anything about the condition of the bank, or that she knew the bank was less safe than it had been at any previous time. It appears from the record that about 60 days before the bank closed it had been examined by the superintendent of banks. He permitted it to continue business. There is nothing in the record to indicate that the bank was any less insolvent then than when it closed, so that, if the defendant secured a preference by accepting payment after the bank was insolvent, so did every one else who drew money out of the bank during that time. The state through its superintendent of banks, having held the bank out to the public as a solvent banking institution, should not now be permitted to recover from defendant for doing business with the bank because it was insolvent. The situation is similar to that described by Judge Elliott in Sioux Falls Trust & Savings Bank v. Homer W. Johnson Co., (D. C.) 20 F. (2d) 693, wherein he said:

"It is repugnant to the instincts of honesty and common decency to say that the state can authorize a bank to open its doors

for the transaction of a banking business, that it will supervise, regulate, and control the transactions of that institution, and in effect say that as long as it is permitted to continue that business it is a continuing invitation for depositors to place their money there for the purpose of checking and the transaction of a banking business in the usual way, and then to say that, notwithstanding this, a man may walk into that bank in the best of good faith and deposit, as did the defendants here, more than $13,000, and notwithstanding the fact that in the transaction between these defendants and Frank H. Johnson, not a single account was overdrawn, the money was there belonging to the parties drawing the checks, the transfer was made in the usual way, in good faith, and notwithstanding that the bank had had the benefit of the deposit of this large amount, with no appreciable change upon the face of the record in the position of the bank, except an increased demand for cash on the part of the depositors, the plaintiff here may maintain an action to impress the amount that the defendants, under those circumstances, legitimately drew from those deposists, with a trust and recover the amount so drawn by the defendants, keeping the balance of the deposit made by the defendants, and complaining only that by a legitimate banking transaction, with no thought or intent to prefer a creditor, checks were drawn, and the balances due these defendants in the bank were legitimately reduced. No such purpose or intent should be, nor in my judgment can be, reasonably attributed as the intent and purpose of the Legislature in the enactment of the South Dakota statute relied upon by plaintiff in this action. There is an entire absence of fraud, or intent to prefer, and, in my judgment, both must concur to present facts actionable under this statute."