In re HOFFMAN Estates.

HOFFMAN, Respondent, v. MOELLER, Appellant.

(225 N. W. 717.)

(File No. 6867.   Opinion filed June 4, 1929.)

*Wanzer & Bandy,* of Armour, for Appellant.
*Roscoe Satterlee,* of Mitchell, for Respondent.

FULLER, C. The Hutchinson County Bank of Parkston suspended operations on August 5, 1926. Within a few days thereafter the bank was reorganized according to the provisions of chapter 104, Laws 1925, by the agreement of a requisite number of depositors. At the time of the bank's suspension, the appellant, F. W. Moeller, as guardian, had on deposit the sum of $1,234.19 for the benefit of John Hoffman, respondent, one of his wards. As guardian aforesaid, the appellant joined in the execution of the reorganization agreement. Consistent with the terms of that agreement and the bank reorganization law, appellant received in lieu of the deposit above mentioned the certificate of the trustees, to whom part of the assets of the suspended bank was transferred for liquidation, and a time and interest-bearing certificate of deposit of the reorganized bank.

When the ward, John Hoffman, came of age, appellant, by report and petition to the county court of Douglas county, sought authority to turn over to the ward the trust certificate and certificates of deposit, aforesaid, in discharge of his further liability as guardian. Hearing was had of the report upon objections of the ward, and, from a decision of the county court favorable to the guardian, his ward appealed to the circuit court. On trial in the circuit court decision was entered in effect that the guardian was personally liable for the sum above stated and interest; requiring him to account for and pay the same to respondent; and refusing the guardian's offer to assign to the ward the certificates above mentioned. From judgment accordingly entered and from order overruling motion for new trial, the guardian appeals. The substance of material facts, agreed upon by stipulation of the parties or appearing by evidence undisputed, follows:

On May 7, 1923, appellant became guardian for Alfred, John, Martha, Amanda, and Leonard Hoffman. Between then and March 31, 1924, he received, in his capacity as guardian, approximately $5,300 which he deposited in the above-named bank of which he was a director, cashier, and a managing officer. Although, by agreement with the directors, he received interest on the balance to his credit at 5 per cent per annum, the account was at all times subject to check. The guardian regularly drew upon the account for the benefit of all his wards, except respondent, and, after successive intervals, as one or another of the wards came of age, he withdrew and paid over the proper share of such ward. Respondent, John Hoffman, did not receive advancements of money for his living expenses as did the other wards, and he claims that the guardian, knowing that the ward was caring for himself, was bound to invest his share of the funds in government bonds, mortgages, and other safe interest-bearing securities, under the decision of Mumford v. Rood, 36 S. D. 80, 153 N. W. 921. A finding of the court which adopts this theory of the respondent is vigorously contested by appellant. But, for reasons shown, this contention need not be determined.

The trial court found that, by joining in the agreement for reorganization of the bank, appellant converted the deposit to his own use and benefit, and reference was made to the lack of any order of the county court allowing the investment of the funds by way of deposit in the above-named bank, or allowing appellant to execute the reorganization agreement. As to this subject we may assume, with appellant, that the original deposit was proper—due to facts which appellant presses upon the attention of the court, but which need not be narrated—and we may likewise assume, without deciding, that no conversion is shown in the absence of proof that the signature of the guardian, as a depositor, was necessary to put the reorganization agreement into effect; that is, there may have been a sufficient number of depositors, other than appellant, joining in the agreement, to accomplish the same result.

However, the trial court found that the bank was insolvent and in a failing condition to the knowledge of appellant from June 1, 1926, to August 5, 1926, when the bank suspended. Appellant in his testimony disputed the claim of insolvency, and denied knowledge thereof, and our consideration of this subject is sufficient

for the disposition of this appeal. Appellant says it would be harsh and incongruous for this court to hold that he was negligent in not withdrawing the deposit because of his knowledge that the bank was insolvent (under the theory of such cases as Independent School Dist. v. Scott, 51 S. D. 187, 212 N. W. 863), while the court is committed to the view that such a withdrawal for such a reason, under like circumstances, would render the withdrawal a preference (under Farmers' Savings Bank v. Bergin, 52 S. D. 1, 216 N. W. 597) ; that he should not be held negligent in failing to do a futile and wrongful act.

But for the purpose of decision of this question we may take the facts as appellant would have them found; i. e., the bank was not insolvent in any regard at any time before suspension. Nevertheless, the testimony of appellant establishes that, on specified dates between May 3, 1926, and June 15, 1926, the bank's reserve varied in amounts from 10 per cent to 14 per cent of the bank's deposits; that on July 17th the reserve was but 7 per cent and, between August 2d and August 5th, it was 8 per cent to 9 per cent. Rev. Code, § 8978, as amended by chapter 97, Laws 1925, provides in part: "Every bank shall keep on hand at all times at least seventeen and one-half per cent of its total deposits of which such portion as the board of directors may determine may be on deposit in banks approved by the superintendent of banks, as reserve banks. * * *"

And Rev. Code, § 8979, provides that: "Whenever the reserve of any bank shall fall below the amount required to be kept, such bank shall not increase its loans or discounts otherwise than by discounting or purchasing bills of exchange payable at sight or on demand, and the superintendent of banks shall notify any bank whose reserve may be below the amount required to make good such reserve, and in case the bank fails for thirty days thereafter to make good such reserve, the superintendent of banks shall be authorized to take charge of and to liquidate the affairs of such bank."

It is therefore apparent that, for a period of nearly a month prior to the first date on which the trial court found this bank to be insolvent, a condition with respect to the conduct of its business by the bank did prevail, to the knowledge of appellant, which was contrary to the requirements of the banking law—requirements

obviously enacted for the security and protection of creditors. There is no showing or finding presented which would indicate that a withdrawal of this deposit between May 3 and June 1, 1926, would constitute a preference under any construction of any decision of this court.

It is the contention of appellant that, prior to June 1st, the bank was admittedly solvent. Notwithstanding its solvency, the fact of its failure to maintain a proper reserve did prevent the bank from increasing its loans—from transacting a certain business of profit for which it was, to a large extent, organized. The condition prevailing during this period, as appellant was bound to know, was one which placed upon the superintendent of banks the duty to act, and to require the repairing of the reserve. The law of which the cashier-guardian had knowledge invested the superintendent of banks with authority to close the bank for liquidation, in event it failed for 30 days, after demand, to reinstate its lawful reserve. Conceding with appellant that the bank was not insolvent in a strict sense of the term, and that insolvency and suspension was not contemplated by its officials, during the month of May, 1926, the proof is here uncontradicted that appellant knowingly allowed this deposit of his wards' moneys to remain in a depositary which was violating a law enacted for the protection of the bank's creditors.

It requires no further discussion or citation of authority to support the conclusion that it was negligent for the guardian to fail to withdraw the deposit, belonging to his trust, in the month of May, 1926. A guardian who allows the funds of his ward to remain on deposit in a bank for a period of nearly a month after knowledge of a substantial and continued impairment of the depositary's reserve is liable for the loss of the deposit through the subsequent insolvency and suspension of the bank.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, BURCH, and BROWN, JJ., concur.