In Re ORGANIZATION AND LIQUIDATION OF BADGER STATE BANK OF BADGER.

BADGER STATE BANK OF BADGER, et al, Appellants, v. FRED WEISS, et al, Respondents.

(249 N. W. 803.)

(File No. 6789. Opinion filed August 23, 1933.)

*Max Royhl,* of Huron, for Appellants.

*Philo Hall* of Brookings, for Respondent Emma Weiss.

*Wm. H. Warren,* of DeSmet, for Respondent Fred Weiss.

RUDOLPH, P. J. An opinion was filed in this case. See In re Badger State Bank, 60 S. D. 484, 245 N. W. 41. Following the filing of the previous opinion, the appellants had issued by this court an order to show cause directed to the respondents, ordering them to show cause why the record in the case should not be temporarily remanded to the trial judge to secure the certificate of said trial judge pursuant to rule 6 of trial courts, and

to designate in said certificate on what the court based its order. After a hearing on the show cause order, this court entered an order as prayed for by appellants, and thereafter the record was certified by the trial judge, and the record properly settled. The case is now before us on its merits. We refer to the former opinion for a statement of the nature of the case.

The facts now disclosed are as follows: On February 25, 1928, Emma Weiss was the owner of an interest in land in Kingsbury county. On that day she agreed to sell, and Fred Weiss agreed to buy, that interest for $1,764.28. Emma executed a quitclaim deed to Fred, and deposited her deed with the cashier of the Badger State Bank. Fred drew a check payable to Emma on his account with the Badger State Bank, and handed it to the cashier. It was agreed between Emma and Fred, and understood by the cashier, that, whenever Fred's attorney approved the title, the deed was to be delivered to Fred, and the consideration agreed upon was to be turned over to Emma. On the same day the cashier received Fred's check, he had Emma indorse it. He then charged the check to Fred's account, and canceled the check. The cashier then made a draft on a Minneapolis bank in the amount thereof, and placed the draft with the deed in an envelope, and kept the same among the bank's papers until the bank was taken over for liquidation by the superintendent of banks. When the bank was taken over by the superintendent of banks, it had in its possession more than the $1,764.28 in cash, and also had credit in the Minneapolis bank on which the draft was drawn in excess of that amount. The title to the land was finally approved by Fred's attorney. The trial court ordered that the superintendent of banks pay to Emma Weiss the sum of $1,764.28 from the assets of the Badger State Bank as a preferred claim against the bank.

To entitle one to a preference against the assets of a closed bank, it must be shown that the transaction, upon which the claim of preference is based, resulted in an augmentation of the assets of the bank. Birch v. International State Bank, 50 S. D. 60, 208 N. W. 167; Farmers' Savings Bank v. Bergin, 52 S. D. 1, 216 N. W. 597; Northwestern National Bank v. James Valley Bank, 53 S. D. 467, 221 N. W. 82; Hornick, More and Porterfield v. Bank, 56 S. D. 19, 227 N. W. 375, 82 A. L. R. 16; Milligan v. First State Bank, 55 S. D. 528, 226 N. W. 747, 748. From the

foregoing statement of facts it is obvious that the transaction here involved never resulted in any augmentation of the assets of the Badger State Bank. The assets which came into the hands of the superintendent of banks by this transaction were not augmented, but simply changed in form. Prior to this transaction, the bank's books showed a credit to Fred Weiss in the amount of the check. After this transaction the books showed a draft drawn on the Minneapolis account, in the amount of this transaction, in favor of Emma Weiss. The entire transaction was one of bookkeeping, and the assets of the bank were neither increased nor depleted. A very similar situation presented itself to this court in the case of Milligan v. First State Bank, supra. In that case the First State Bank of Barnard was the agent of plaintiffs to collect and remit to them certain rentals. The rentals were paid by checks on the Barnard bank. At the time the checks were drawn, the drawer had credit with the Barnard bank upon open checking account in an amount in excess of the amount of the checks. Upon receiving the checks the Barnard bank charged the same against the accounts of the drawers, but instead of taking from the cash in the vault the amount called for in the checks and remitting it to the plaintiffs, the Barnard bank without right or authority opened an account on its books in the name of the plaintiffs, and credited that account with the amount of such checks, and the matter continued in that status until the closing of the bank for liquidation. This court said: "Conceding in this case that the circumstances were such that a trust relationship arose between respondents and the bank as to anything that the bank received in behalf of the respondents, it does not appear that any part of the cash in the bank, when taken over by the superintendent, or any other asset coming into the superintendent's hands, was in fact received by the bank as agent of respondents. No one paid any actual money to the bank as agent of respondents. The bank, as agent of respondents, received merely written orders upon itself for the payment to respondents pro tanto of a debt owed by the bank to the drawers of the orders. Instead of complying with said orders, the bank merely debited the accounts of the drawers thereof and credited the respondents. So far as concerns the actual cash assets of the bank which came to the hands of the superintendent of banks, they were neither increased nor depleted. The bank simply juggled

credits. The cash in vault, which subsequently came into the hands of the superintendent of banks, was in no manner augmented. A mere bookkeeping transfer was made, and while, as between the bank and respondents, the bank was not authorized to make such transfer, nevertheless the fact remains that neither respondents nor any one for them put into the vaults of the bank any part of the $1,800 which was there when the superintendent of banks took over the assets."

The respondent contends that this was an escrow transaction, and "that the bank never acquired any right or title to said money or deed, and the conditions of the escrow have been performed agreeable to the parties thereto. Emma Weiss is entitled to the money." This contention would perhaps be sound if the bank actually held the money in escrow. The difficulty is that the money was not held in escrow, and to sustain respondent's claim and pay Emma Weiss in full, it would be necessary that Emma Weiss be paid as preferred creditor from the general assets of the bank. We are convinced that under the prior holding of this court, Emma Weiss is not entitled to any preference.

Costs will be taxed in favor of appellants, except for the original briefs. Respondents are entitled to tax costs for their original brief.

The order appealed from is reversed.

CAMPBELL, ROBERTS, and WARREN, JJ., concur.

POLLEY, J. (dissenting). I am not able to agree with the majority opinion in this case. The money involved never became the property of the bank nor any part of a trust fund for the benefit of creditors. When the bank accepted the deed executed by Emma Weiss and the check executed by Fred Weiss with directions from both parties to deliver the deed to Fred and the check to Emma when Fred's attorney approved the title to the land conveyed by the deed, the bank became the agent and trustee of both parties. The bank had no authority to cancel the check and issue a draft in its stead. It had no authority to do anything with the check but to deliver it to Emma when the title was approved or to return it to Fred if the title were not approved. Canceling the check and charging the amount thereof to Fred's account did not transfer title to the money to the bank. Emma never consented to the cancellation of the check, nor to the pur-

chase of a draft, nor the deposit of the proceeds of the check to her account in the bank. The relationship of debtor and creditor never arose between her and the bank. When the bank canceled the check it became an involuntary trustee of the amount of the check for the one entitled to the proceeds of the check. The act of the cashier of the bank in canceling the check was wrongful and unlawful, and as said in the dissenting opinion in Farmers' Saving Bank et al v. Bergin et al, 52 S. D. 1, 216 N. W. 597, 599: "It was pointed out by this court in City of Sturgis v. Bank, 38 S. D. 317, 161 N. W. 327, that money wrongfully or unlawfully deposited in a bank did not become a part of the fund for the benefit of the general creditors when the bank became insolvent." This is the rule followed in Yellowstone County v. Bank, 46 Mont. 439, 128 P. 596, and State v. Bruce, 17 Idaho, 1, 102 P. 831, L. R. A. 1916C, 1, 134 Am. St. Rep. 245. To me it is plain robbery to take this woman's money under the circumstances disclosed by the record in this case, and distribute it to the creditors of the bank. She was not a depositor and never became a creditor. She never consented that her money should be mingled with or become a part of the funds of the bank. The disposition of this case made by the majority of the court is justified by the claimed fact that the funds of the bank were not augmented by the transaction. This contention is not warranted by the facts. When the cashier canceled Fred Weiss' check he is presumed to have withdrawn the amount of the check from the funds of the bank and paid the money to Emma. This depleted the funds of the bank to that extent; and when he issued the draft and charged the amount of it to Emma, he augmented the funds of the bank just that much.

I am aware that the disposition made of this case is supported by former decisions of this court, but they were wrong, and should not be followed.