SMEE SCHOOL DISTRICT NO 4, CORSON COUNTY, Appellant, v. SALZSIEDLER, Treasurer Corson County, et al, Respondents.

(257 N. W. 111.)

(File No. 7659. Opinion filed November 8, 1934.)

T. R. *Johnson,* of Sioux Falls, for Appellant.

*H. R. Wilmsen,* State's Attorney, Corson County, of McIntosh, and *Morrison & Skaug,* of Mobridge, for Respondents.

ROBERTS, P. J.   This is an action by the plaintiff school district to secure possession of certain warrants issued by the plaintiff or a money judgment for their value.   The case was tried to the court, and findings and judgment were in favor of the defendants, and from this judgment and order denying motion for new trial plaintiff has appealed.

The record discloses that the Wakpala State Bank suspended business on the 22d day of December, 1928, and the superintendent of banks took charge of the affairs of the bank immediately thereafter for purposes of liquidation.   Corson county had on deposit on the date of suspension the sum of $5,785.81, and the plaintiff school district at that time had on deposit the sum of $35,540.75. The bank pledged as security for the payment of county funds warrants issued by the plaintiff school district together with other securities consisting of county and township warrants and real estate mortgages.

The complaint alleges that the officers of the bank delivered to the county treasurer of Corson county the warrants in question, and that the same were accepted by him when "the bank was insolvent and when its suspension by the superintendent of banks was imminent and inevitable," and that the treasurer had at that time "both actual and constructive knowledge of the insolvency" of the bank.

The county treasurer in his answer denies generally the allegations of the complaint and alleges affirmatively that the warrants were pledged as security for the payment of county funds by the bank as a designated county depository.   The court found that there was no evidence that the bank was insolvent at the time of the delivery of the warrants to defendant treasurer, and that the warrants were pledged in good faith.

Section 8984, Rev. Code 1919, contains a general prohibition to the effect that no state bank shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security.   An exception has been made to this general prohibition to include deposits of county and other public funds.   Chapter 53, Laws 1927, and chapter 50, Laws 1933; Strain v. Potter County, 63 S. D. 24, 256 N. W. 147.   Plaintiff maintained this suit in the trial court on the theory that deposit of assets by a bank as collateral security with a county treasurer is preferential if the assets

are pledged by the bank when it is knowingly insolvent and not in the usual and ordinary course of business. This court has held that an insolvent corporation may not prefer its creditors, but that upon insolvency the assets of such corporation become a trust fund in its broadest and most general terms for the payment of its creditors on an equal pro rata basis. Adams & Westlake Co. v. Deyette, 8 S. D. 119, 65 N. W. 471, 31 L. R. A. 497; Bank of Springfield v. Williams, 48 S. D. 529, 205 N. W. 221, 50 Am. St. Rep. 751; Farmers' Savings Bank v. Bergin, 52 S. D. 1, 216 N. W. 597; on rehearing, Id., 53 S. D. 396, 220 N. W. 859; Smith v. Mc Cowan, 60 S. D. 504, 244 N. W. 891, 893. Conceding, for the purpose of decision only, that pledging of assets to a county by a bank when it is knowingly insolvent and with no expectation of continuing in business extends beyond the terms of the statute authorizing banks to pledge enumerated classes of securities, we nevertheless are of the opinion that the transactions here involved were not preferential. In the case of Smith v. McCowan, supra, this court considering a claim of preference said: "In every bank failure there comes a time after actual insolvency and prior to closing when it is apparent that the insolvency is hopeless and that there is no longer any reasonable expectation of being able to redeem the bank's fortunes and continue in business. At or before that stage of the insolvency is reached, the bank ought to be closed, but this is not always done. Just when that stage is reached with reference to any particular bank is a question of fact. Prior to that stage of the proceedings, transfers or payments by the bank to a creditor will not be deemed preferential, unless made in actual contemplation of insolvency or with actual intention to create a preference which will usually mean (although perhaps not always or necessarily) that the particular creditor with whom the dealing is had knows, or has reason to know, of the insolvent and failing condition of the bank. When the stage of insolvency is reached, however, where there is no longer a reasonable expectation of recovery, the necessary result of any transfer of assets or payment to a creditor will be to create a preference. From that point forward the officers of the bank must be deemed, as a matter of law, to be dealing with the assets of the bank in contemplation of insolvency, and must be deemed, as a matter of law, to intend a preference if they transfer or pay any of such assets to a creditor

without other consideration than a cancellation pro tanto of that creditor's claim against the bank. All such payments and transfers will be deemed preferential and recoverable accordingly, excepting only those which are clearly found as a matter of fact, to be made in the due, ordinary, usual, and customary course of the banking business to a creditor without knowledge of the true situation and not motivated by a desire to secure a preference."

■ It appears that real estate mortgages owned by the cashier of the bank and his wife were included among the collaterals first deposited with the county treasurer. These mortgages were withdrawn on August 6, 1928, and warrants were substituted. The other warrants here involved were pledged on March 25, 1927. Plaintiff offered proof of the legal reserve of the bank on certain dates between March 1, 1927, and December 22, 1928, but no attempt was made to prove that the value of the assets of the bank when it pledged the warrants were not equal to its liabilities, exclusive of stock liabilities. While there is some evidence that a portion of the assets of the bank did not have a realizable cash value, the record would not warrant a finding of actual insolvency or knowledge of an impending closing when the warrants were pledged.

■ ■ Appellant next contends that the evidence is insufficient to sustain the findings of fact; that the trial court should have found that plaintiff prior to the closing of the bank had no notice of the pledging of the warrants by the bank. As urged by the appellant, it is the general rule of law that an assignee of a thing in action or of a nonnegotiable written contract for the payment of money takes an assignment subject to all rights to set-off which the debtor or maker had against the assignor at the time or before such party receives notice of assignment. Sections 742, 2307, Rev. Code 1919; Lewis v. Rutland Independent School Dist., 60 S. D. 163, 244 N. W. 102; Waverly Ind. Consol. School Dist. v. Young, 62 S. D. 434, 253 N. W. 480. The record would have warranted a finding that the plaintiff district had notice of the pledging prior to a matured liability of the bank to the school district. The trial court, however, made no finding upon the question of notice and no request was made to find upon such issue. The attention of this court is not directed to a finding unsupported by the evidence, but to facts which appellant claims are established by the record. The contention that the court erred in not finding on

the issue of notice for the plaintiff is not presented for review. Kupfer v. Biehn, 41 S. D. 163, 169 N. W. 514; Hamann v. Egan, 44 S. D. 416, 184 N. W. 236.

We have considered the other assignments of error presented by plaintiff and find that they present no reversible error in the proceedings in the trial court.

The judgment and order appealed from are affirmed.

All the Judges concur.