## YELLOWSTONE COUNTY, Appellant, v. FIRST TRUST & SAVINGS BANK et al., Respondents.

(No. 3,183.)

(Submitted November 26, 1912.   Decided December 6, 1912.)

[128 Pac. 596.]

*County Funds — Depositaries — Indemnity — Deposit Without Security Unlawful—Defunct Banks—Distribution of Assets— General Deposits—Trustees ex Maleficio—Estoppel—Trusts— Commingling Trust Funds—Identification—When Unnecessary—Agreed Statement—Effect.*

County Funds—Banks—General Deposits—Double Indemnity—Surety Companies—Applicability of Statute.
1.  The clause in section 3003, Revised Codes, requiring double indemnity from a bank in which a county treasurer purposes to make a general deposit of county funds, applies not only to bonds furnished by individuals but to foreign surety bonds as well.

Same—Deposit Without Security—Effect of Giving Security Subsequently.
2.  Where a county treasurer had county funds on deposit in a bank in the sum of $33,000 without having first exacted an indemnity bond as required by section 3003, Revised Codes, and the bank later furnished bond in the sum of $25,000, the legal effect of such latter action was a redeposit of a sum equal to one-half of the amount of the bond, to-wit, $12,500, and neither its validity nor sufficiency was impaired by the wrongful act of the treasurer in keeping on deposit a sum in excess of the latter amount.

Same—General Deposits—Defunct Bank—Distribution of Assets.
3.  To the extent of $12,500 of the total deposit of $33,000 referred to in paragraph 2 above, the funds belonging to plaintiff county constituted a general deposit, and to that extent, by compliance with the requirements of section 3003, Revised Codes, relative to furnishing security, it consented to become a general creditor of the bank, and, in case of the bank's failure, to share alike with other general creditors in the distribution of its assets, or to look to the surety for relief.

Counties—Control—Power of Legislature.
4.  A county is a political subdivision of the state, and, except in so far as the legislature is restricted by the state Constitution, is subject to legislative regulation and control.

County Funds—Unlawful Deposit—Trustee *ex Maleficio.*
5.  The keeping of county funds on deposit to the extent of $20,500, excess over and above the sum of $12,500 secured by bond as required by section 3003, Revised Codes (see paragraph 3 above), was unlawful and without the county's consent, and as to such excess, the bank, chargeable with knowledge of the unlawful conduct of the county treasurer, and therefore an active participant in the wrong, became a trustee *ex maleficio,* for the use and benefit of the county.

Estoppel *in Pais*—Who may Invoke Doctrine.
6.  To make the doctrine of estoppel *in pais* applicable, the party invoking it must show that he was misled to his prejudice by the conduct of which he complains.

County Funds—Unlawful Deposit—Ratification—Estoppel.

7.   A county, not having authority to empower its treasurer to make a general deposit of its funds without first requiring a bond in double the amount sought to be deposited, cannot, under section 5427, Revised Codes, ratify the treasurer's wrongful act in doing so, and therefore may not be held estopped to assert that such act was wrongful, because of its presumed ratification thereof.

Same—Estoppel—Failure of Officers to Perform Duty.

8.   The fact that neither the county commissioners nor the state examiner, whose duty it is to ascertain the depositaries of county funds and inquire into the sufficiency of the bonds held to secure them, interposed any objection to a county treasurer's wrongful conduct in depositing such funds without exacting any security, does not constitute an estoppel on the part of the county to claim that his act was unlawful.

Same—Unlawful Deposit—Following Custom.

9.   That a county treasurer was following a custom established by his predecessor in depositing public moneys in bank without requiring the security prescribed by section 3003, Revised Codes, was not any defense to a suit by the county to have the bank declared a trustee *ex maleficio* of such moneys for its benefit, and to be decreed entitled to preference in the distribution of the assets of the bank, then in the hands of a receiver.

Principal and Agent—Power to Repudiate Agent's Act.

10.   A principal is not estopped to repudiate the act of his agent having limited power, so far as that act transcends his authority, unless the principal has by his course of conduct clothed the agent with ostensible authority to do the particular act.

Commingling Trust Funds—Identification of Property.

11.   Where trust property is money which has been mingled with other funds (as in a bank), it is not necessary for the *cestui que trust,* before he can recover, that he be able to identify the particular pieces of money; it is sufficient if he can trace his funds in the original or substituted form.

County Funds—Bank—Trustee *ex Maleficio*—Commingling Funds.

12.   The agreed statement upon which the case was tried reciting that county funds deposited in defendant bank were commingled with "the funds of said bank," the contention that a trust declared in favor of the county could not extend further than the money actually in the bank at the time of its suspension, exclusive of funds held for it in correspondent banks, had no merit.

Same.

13.   Under the rule that where trust funds are mingled with private funds, the entire mixed fund will be impressed with the trust to the extent of the trust funds, except in so far as the owner of the private funds is able to distinguish and separate his own from the trust funds, the entire funds which came into the hands of the receiver of a bank *held* impressed with a trust in favor of plaintiff county, where neither the bank nor the receiver could make segregation.

Agreed Statement—Equity—Effect.

14.   An agreed statement of facts in an equity case constitutes the finding of facts.

*Appeal from District Court, Yellowstone County; George W. Pierson, Judge.*

ACTION by Yellowstone County against the First Trust & Savings Bank, of Billings, Montana, and S. G. Reynolds, receiver, to have certain county funds deposited in defendant bank declared a trust fund and entitled to preference in the distribution of its assets. Judgment for defendants, and plaintiff county appeals therefrom. Reversed and remanded.

*Messrs. Nichols & Wilson,* and *Mr. Chas. A. Taylor,* for Appellant, submitted a brief; *Mr. Harry L. Wilson* argued the cause orally.

Appellant contends that the sum of $33,000 of its money on deposit in the respondent bank at the time of the latter's suspension was a trust fund, with the payment of which the assets of the bank in the hands of the receiver were chargeable as a preferred claim, before any distribution among the general creditors of the bank. This for the reason that the deposit, as made by the county treasurer, was unlawful, being in violation of the statute, and was so made without the consent of appellant, the true owner of the money, and that the county cannot be bound to its prejudice by the wrongful and unlawful acts of its treasurer and the bank. As a general proposition of law, it is certainly well established that public money wrongfully or unlawfully deposited in a bank by a county treasurer or other public officer becomes a trust fund, and no part of the estate of the bank; and in case of the insolvency of the bank, its receiver must treat such fund as the property of the true owner, and not of the bank. This doctrine is upheld and ably discussed in the case of *State* v. *Thum* (Idaho), 55 Pac. 858, which involved a deposit of state funds by the state treasurer in a bank which became insolvent, and the opinion in which case cites: *Wolffe* v. *State,* 79 Ala. 201, 58 Am. Rep. 590; *First Nat. Bank* v. *Hummel,* 14 Colo. 259, 20 Am. St. Rep. 257, 23 Pac. 986; *State* v. *Midland State Bank,* 52 Neb. 1, 66 Am. St. Rep. 484, 71 N. W. 1011; *Foster* v. *Rincker,* 4 Wyo. 484, 35 Pac. 470; *Kimmel* v. *Dickson,* 5 S. D. 221, 49 Am. St. Rep. 869, 25 L. R. A. 309, 58 N. W. 561; Mechem on Public Officers, 922; *Winslow* v. *Iron Co.* (Tenn. Ch. App.), 42 S. W. 698; *Hubbard* v. *Manufacturing Co.,* 53 Kan.

637, 36 Pac. 1053, 37 Pac. 625; *Ryan* v. *Phillips*, 3 Kan. App. 704, 44 Pac. 909; *City of Larned* v. *Jordan*, 55 Kan. 124, 39 Pac. 1030. The *Thum Case* is reviewed and followed in *First Nat. Bank* v. *Bunting*, 1 Idaho, 27, 59 Pac. 929, 1106, the latter case, however, being an outgrowth of the former.

Upon the trial of this cause in the court below it was urged by respondents that the Idaho cases are not pertinent to this controversy, because of the fact that the Idaho statute prohibits the depositing of public funds on general deposit under any circumstances, whereas our own statute (sec. 3003) expressly authorizes a county treasurer to make a general deposit of the public funds in his possession. But it will be observed that section 3003 imposes a condition precedent to the making of any such general deposit, and that important and arbitrary condition is that the county treasurer shall require from the bank where such deposit is made a good and sufficient bond in double the amount deposited; in other words, the statute prescribes the precise manner in which any such deposit shall be made, and therefore we submit that any violation thereof in the depositing of county funds is wrongful and unlawful, both on the part of the treasurer in making the deposit and on the part of the bank in receiving it. In addition to the authorities cited above, see, also, *Myers* v. *Board*, 51 Kan. 87, 37 Am. St. Rep. 263, 32 Pac. 658; *Watts* v. *Board*, 21 Okl. 231, 16 L. R. A., n. s., 918, 95 Pac. 771; *Bunton* v. *King*, 80 Iowa, 506, 45 N. W. 1050; *San Diego Co.* v. *California Nat. Bank*, 52 Fed. 59; *State* v. *Bank of Commerce*, 54 Neb. 725, 75 N. W. 28; *State* v. *Foster*, 5 Wyo. 199, 63 Am. St. Rep. 47, 29 L. R. A. 226, 38 Pac. 926.

It was argued in the trial in the court below that even though the deposit of appellant's money in the respondent bank be held to be a trust fund, nevertheless the county cannot claim a preference therefor upon the assets in the hands of the receiver without identifying its own particular property or fund. This it need not do. Trust funds may be followed into the trustee's estate, although no particular property or asset can be identified as having been purchased or acquired by the particular funds, where it appears that the trust fund was mixed and commingled

with the general funds and property of the trustee's estate, and went into the general assets, either in the purchase of paper and securities or in the payment of the debts of the trustee; and in such case the lien of the *cestui que trust* will attach against the entire assets of the trustee's estate for the payment of such claim. (*State* v. *Bruce,* 17 Idaho, 1, 134 Am. St. Rep. 245, 102 Pac. 831; *Slater* v. *Oriental Mills,* 18 R. I. 352, 27 Atl. 443; *Standard Oil Co.* v. *Hawkins,* 74 Fed. 395, 20 C. C. A. 468, 33 L. R. A. 739; *Reeves* v. *Pierce,* 64 Kan. 502, 67 Pac. 1109.) Even if the trust fund has been mixed with other funds of the bank, this cannot prevent the plaintiff from following and reclaiming the fund, because if a trust fund is mixed with other funds, the person equitably entitled thereto may follow it, and has a charge on the whole fund for the amount due. (*Peak* v. *Ellicott,* 30 Kan. 156, 46 Am. Rep. 90, 1 Pac. 499; *Francis* v. *Evans,* 69 Wis. 115, 33 N. W. 93; *Kimmel* v. *Dickson,* 5 S. D. 221, 49 Am. St. Rep. 869, 25 L. R. A. 309, 58 N. W. 561.) Equity will follow the trust money even if put into a bag or indistinguishable mass, by taking out the same quantity. (*Foster* v. *Rincker,* 4 Wyo. 484, 35 Pac. 470.) The theory on which courts proceed in all such cases is, and must be, that no title to the trust fund ever passed to the trustee, and that, however it has been mixed and mingled with his other property, the title still remains in the *cestui que trust.* (*Hubbard* v. *Alamo,* 53 Kan. 637, 36 Pac. 1056, 37 Pac. 625; *National Bank* v. *Insurance Co.,* 104 U. S. 57, 25 L. Ed. 693; *Kantchbull* v. *Hallett,* 13 Ch. Div. 696; *Holder* v. *Western German Bank,* 136 Fed. 90, 68 C. C. A. 554; *Erie R. Co.* v. *Dial,* 140 Fed. 689, 72 C. C. A. 183.) When a trustee wrongfully commingles trust money with his own, and makes payments from the common fund, it will be presumed that he paid out his own money, and not the trust money. (*State* v. *Bank of Commerce,* 54 Neb. 725, 75 N. W. 28.)

We submit that the facts of this case, as disclosed by the agreed statement, meet every condition necessary under the authorities to entitle the county to recover its money from the receiver as a trust fund, in preference to the payment of the claims of general creditors.

*Messrs. Hathhorn & Brown,* and *Mr. A. H. Brown,* for Respondents, submitted a brief; *Messrs. Michael* and *A. H. Brown* argued the cause orally.

The appellant in this case relies entirely upon the assumption that this deposit was unlawful, and was therefore a trust fund, and that the county never consented to become a creditor of the respondent bank. In its most liberal construction, can it be assumed that a deposit secured by a bond of a foreign surety company in an amount presumed to have been agreeable to all parties concerned, under section 3003, Revised Codes, was unlawful? We maintain that it cannot. Under sections 2953, 2981, 2982, 3007, relative to the duties of certain county officers touching public funds, and section 209 referring to the duties of the state examiner, which are presumed to have been followed, and from the fact that the county of Yellowstone, as beneficiary of the bond, by accepting it and making deposits thereunder, and presumably receiving and approving said reports as required, the presumption is raised that the county, by its agents (*Board of Supervisors* v. *Otis,* 62 N. Y. 88), either was guilty of gross negligence in permitting its funds to be jeopardized, or that it relied upon the bond given and accepted. (*Commissioners* v. *American L. & T. Co.,* 75 Minn. 489, 78 N. W. 113; *Commissioners* v. *Security Bank,* 75 Minn. 174, 77 N. W. 815.) This being true, can the county now deny its consent to the deposit? We maintain that it cannot, and that the board of county commissioners, by relying upon the bond and permitting the county treasurer to deposit the county's funds thereunder, constituted the respondent bank a legal depositary of the county's funds. "If the treasurer exceeds his duty by depositing a larger sum in a depositary bank than he is authorized by law to do, it does not affect the liability of such bank and the sureties on its bond to repay to the state the sum deposited therein." (See *In re State Treasurer Settlement,* 51 Neb. 116, 36 L. R. A. 746, 70 N. W. 532.) If, under such condition, the liability of the bank and the surety on its bond is in nowise affected by the irregularity or the excess of deposit, must we not reason therefrom that the consideration for such liability is a lawful one?

The facts in this case show that the money in question was a general deposit in the bank and was mingled with the moneys belonging to it.   A depositary's bond usually covers deposits made before as well as after its execution.   (13 Cyc. 815.)   Evidence that a bond was filed and deposits made thereunder raises a presumption that the deposits were made in reliance on the bond, and that the bank in which the deposit was made was a legally constituted depositary for such funds.   (*St. Louis County* v. *American L. & T. Co.,* 75 Minn. 489, 78 N. W. 113.)   A deposit of public moneys by a state treasurer in a legally constituted depositary for public funds is in substance and legal effect a loan of the money so deposited.   (*In re Treasurer Settlement,* 51 Neb. 116, 36 L. R. A. 746, 70 N. W. 532.)   The general rule seems to be that deposits made by trustees, executors, administrators, assignees, public officers and other persons who are serving as fiduciaries, in the absence of an express agreement to the contrary, are simply general depositors, and if the bank fails to pay them, the beneficiaries have no peculiar claim or right over other creditors, but must share like other general depositors. (See *Board of Education* v. *Union Tr. Co.,* 136 Mich. 454, 99 N. W. 373; 5 Cyc. 514, 515; *Fletcher* v. *Sharpe,* 108 Ind. 276, 9 N. E. 142; *Commissioners* v. *Wilkinson,* 119 Mich. 655, 44 L. R. A. 493, 78 N. W. 893; *Bayor* v. *American Trust Co.,* 157 Ill. 62, 41 N. E. 622.)   Even where a trust exists, that fact is not decisive of the right to a preference in the distribution of funds. There must be some showing that the estate has been augmented by the trust funds, or at least that the estate has been so benefited by the misappropriation of trust funds that the removal of its equivalent from the estate will be without prejudice to creditors.   (34 Cyc. 348; *Standard Oil Co.* v. *Hawkins,* 74 Fed. 395, 20 C. C. A. 468, 33 L. R. A. 739; *Butler* v. *Sprague,* 66 N. Y. 394; *Cook* v. *Tullis,* 18 Wall. 332, 21 L. Ed. 933; *Clark* v. *Iselin,* 21 Wall. 360, 22 L. Ed. 568; *Van Alen* v. *American Nat. Bank,* 52 N. Y. 1; *American Can Co.* v. *Williams,* 178 Fed. 420, 101 C. C. A. 634; *Lowe* v. *Jones,* 192 Mass. 94, 116 Am. St. Rep. 225, 7 Ann. Cas. 551, 6 L. R. A., n. s., 487.)

Respondents further contend·that the claim of the appellant that the balances due from banks and bankers, as shown by the agreed statement of facts, would furnish assets enough to satisfy the entire claim of said appellant, in the absence of any attempt to identify any part of these particular balances as a part or all of this alleged trust fund, is erroneous. The conclusion to be drawn from all cases cited by the appellant, as well as by the respondent, wherein the question arose is that only money in the vault at the time of the closing of the bank could be considered, and that none of the cases cited hold! that an undisputed trust fund is a preferential claim against all assets. The facts submitted show that this amount was $17,578.81, and under any condition the respondents contend this amount and none other should be considered. (*Davenport Plow Co.* v. *Lamp,* 80 Iowa, 722, 20 Am. St. Rep. 442, 45 N. W. 1049; *State* v. *Thum,* 6 Idaho, 323, 55 Pac. 658; *Brooks* v. *King,* 104 Iowa, 713, 74 N. W. 683; *Page* v. *Rose,* 130 Iowa, 296, 8 Ann. Cas. 114, 5 L. R. A., n. s., 886, 106 N. W. 744; *Nonotuck Silk Co.* v. *Flanders,* 87 Wis. 237, 58 N. W. 383; *State* v. *Bank of Commerce,* 54 Neb. 725, 75 N. W. 28.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Ira L. Whitney was county treasurer of Yellowstone county for the term commencing the first Monday of March, 1909. As such treasurer he kept a portion of the county's funds on deposit with the First Trust and Savings Bank, of Billings, and this deposit amounted to $50,000 on the 1st day of March, 1910. On that day the bank furnished to the county its indemnity bond, under the provisions of section 3003, Revised Codes, for the penal sum of $25,000, executed by a foreign surety company authorized to do business in this state. During June, 1910, the treasurer drew from the bank $17,000, leaving a balance of $33,000. On July 2, the bank, being insolvent, suspended, and immediately thereafter S. G. Reynolds was appointed receiver for the bank and took possession of its assets. At the time the bank suspended it had on hand in its vaults $17,578.81, and on

deposit with its correspondent banks $31,420.03, all of which sums came into the possession of the receiver. A demand upon the receiver that he pay over to the county the full sum of $33,000 was refused, and this suit was instituted by the county to have that sum declared to be a trust fund and entitled to preference in the distribution of the assets of the bank. The cause was submitted upon an agreed statement of facts, with the result that the prayer of plaintiff was denied and judgment entered in favor of defendants, from which judgment this appeal is prosecuted.

The agreed statement discloses that the funds deposited by the county treasurer with the bank were known to the bank to be county funds, but were treated as general deposits by the bank and the treasurer and were commingled with the other funds of the bank. The theory of counsel for plaintiff is that, since an indemnity bond for double the amount of the county funds on deposit was not exacted as required by section 3003 above, the entire transaction between the bank and the treasurer was unlawful, and the bank was simply a trustee of the funds for the use and benefit of the county. Counsel for defendants insist that all of the funds so deposited by the treasurer constituted general deposits, and the county became a general creditor of the bank, and can only participate with other general creditors in the distribution of the bank's assets. We are unable to agree with either of these contentions in its entirety. We are not called upon in this action to determine the full measure of the bonding company's liability. While the agreed statement does not recite that the indemnity bond was approved by the county commissioners of Yellowstone county, all parties to this proceeding appear to treat it as though such approval was given, and we shall do likewise.

1. Section 3003 charges the county treasurer with the duty of safely keeping all county funds, and to that end it authorizes him (1) to make special deposits of funds without requiring indemnity, and (2) to make general deposits of funds upon requiring from the depositary an indemnity bond in double the amount deposited. The statute reads as follows: ''In the event

that he shall deposit the same, or any part thereof in any national, state or private bank or banks, he shall require from such bank or banks a good and sufficient bond in double the amount deposited, signed by three or more good and sufficient sureties, which must be approved by the board of county commissioners and filed with the county clerk of the county. But nothing in this section prohibits him from making special deposits for the safekeeping of public moneys. Provided, always, that this Act shall in nowise repeal, affect or in any wise modify the provisions of an Act entitled an Act to permit foreign surety companies to do business in this state, and regulating the method thereof, approved February 24, 1899.''

Counsel for defendants suggest that the provision above [1] for double indemnity applies only to bonds given by individuals, and that foreign surety bonds are excepted from the double indemnity clause, but with this we cannot agree. The Act of February 24, 1899 (Laws 1899, p. 82), as amended by the Laws of 1903 (p. 294), authorizes foreign surety companies to do business in this state upon complying with the legislative requirements. It further provides that whenever any bond is required by law to be given, such bond may be executed by a surety company qualified under the Act, and such bond so executed shall be deemed to comply with the statutory requirements, as to the number of sureties, the residence of the sureties, *etc.* In other words, under this Act the bank had the option to furnish a bond executed by private persons, or a bond executed by a surety company; but in either case the bond was required to be in double the amount of the county funds deposited. With the wisdom of this legislation we are not concerned. It might be difficult to assign any reason for the legislative action in requiring double indemnity, but that the legislature could make such requirement is not questioned, and that our legislature has done so in section 3003 above does not admit of doubt. With the acceptance of this bond for $25,000, then, the treasurer could lawfully keep on deposit with this bank county funds to the amount of $12,500, and the deposit of such funds to that amount would constitute a general deposit, authorized by section 3003

above, and to that extent the county would give its consent to become a general creditor of the bank and that its funds to that [2] amount might become the funds of the bank to be commingled with its other funds and assets.  At the time this bond was given, it constituted good and sufficient indemnity for the deposit of the county funds, to the extent of $12,500.   In other words, when the bond was given to secure county funds already on deposit, in legal effect there was a redeposit of the $12,500 thus secured (*Meeker County* v. *Butler,* 25 Minn. 363), and neither the validity nor the sufficiency of the bond was impaired in the least by the wrongful act of the treasurer in keeping on deposit with that bank a sum in excess of that amount.  (*In re State Treasurer,* 51 Neb. 116, 36 L. R. A. 746, 70 N. W. 532; 13 Cyc. 816.)

To the extent, then, of $12,500 the county funds deposited in this bank by the treasurer constituted a general deposit [3] (*Bank* v. *Bartley,* 39 Neb. 353, 23 L. R. A. 67, 58 N. W. 172), and to that extent the county itself consented to become a general creditor of the bank, and, in case of the bank's failure, to share alike with other general creditors in the distribution of its assets, or to look to the bonding company for relief.  (*Commercial Bank* v. *Armstrong,* 148 U. S. 50, 37 L. Ed. 363, 13 Sup. Ct. Rep. 533.)

2. The fact, however, that the deposit of the county's funds to the extent of $12,500 was secured does not reflect in the least upon the status of the $20,500 kept on deposit in this bank without security and in violation of the law.  The act of the treasurer in keeping this excess on deposit without the security required by section 3003 is denounced by section 8592, Revised Codes, as a felony; and the treasurer and the bank officials are chargeable with knowledge that the use to which these county funds were thus put was altogether illegal and wrongful, and that the county—the rightful owner of such excess—did not consent to such use and did not part with its title to the funds thus employed.  (*State* v. *Thum,* 6 Idaho, 323, 55 Pac. 858.)  The only method by which the county could give its consent that its funds might be placed on general deposit was by speaking

through the legislature, as it did in section 3003 above. To the extent that the provisions of that section were complied with, it [4]   gave its consent and beyond that it did not and could not go.   The county is but a political subdivision of the state, and, except in so far as the legislature is restricted by the state Constitution, is subject to legislative regulation and control.   (*Independent Pub. Co.* v. *Lewis & Clark County,* 30 Mont. 83, 75 Pac. 860; *Missouri River P. Co.* v. *Steele,* 32 Mont. 433, 80 Pac. 1093; 11 Cyc. 365.)   The legislature having designated the particular instance, and the only one, in which the county's funds may be placed on general deposit, it was not within the power of anyone else to consent to a general deposit of such funds under any other circumstances.   The deposit of $20,500 excess, without [5]   security, was wrongful and unlawful.   The county did not consent thereto, never parted with its title to such funds, and the treasurer and the bank officers knew of these facts, being chargeable with knowledge of the law.   The bank was an active participant in the wrong, and the result follows, as of course, that as to such excess the bank held it as a trustee *ex maleficio,* for the use and benefit of the county.   (*State* v. *Thum,* above; *Wolffe* v. *State,* 79 Ala. 201, 58 Am. Rep. 590; Mechem on Public Officers, 922.)

3. If the county treasurer had performed the duties of his office as required by law, he would have withdrawn this $20,500 from the bank on March 1, 1910, if not earlier, and the fact that he did not do so only serves to demonstrate that by his wrongful act the county funds were made to swell the apparent assets of the bank to that amount.   No one will now be heard to say that these funds, wrongfully in the bank, should not be withdrawn; no one can be injured by having that done which ought to have been done.

4. Counsel for respondents direct our attention to the provisions of the Codes which impose upon the board of county commissioners and the state examiner the duty to examine the treasurer's accounts, ascertain the depositaries of the county funds and inquire into the sufficiency of the bonds held to secure

such funds, and the further provision which raises the presumption that these officers discharged their official duties; and it is argued that if they did so, they must have known that this $20,500 excess was held by this bank without any security given therefor, with the result, it is contended, that the county is now precluded from disputing with the receiver, who represents the other creditors, that the deposit of such amount was not a general deposit, as it appeared to be and as it was treated by the [6] bank and all these officers.   Apparently this argument is based upon the doctrine of estoppel *in pais.*   In the first place, there is not anything in this record to indicate that anyone was led to become a creditor of the now defunct bank, by reason of the amount of its assets increased by this unlawful deposit of county funds; and it is elementary that before anyone can invoke the doctrine, he must show that he was misled to his prejudice by the conduct of which he complains.   (*Tatem* v. *Eglanol Min. Co.,* 45 Mont. 367, 123 Pac. 28.)   Furthermore, the doctrine, if applied in this instance, has its foundation in the presumed ratification of the treasurer's wrongful act, but such ratification was impossible.   Unless the county, in the first [7] instance, could authorize the treasurer to make a general deposit of the county's funds without security, it could not thereafter ratify his act in making such deposit.   Section 5427, Revised Codes, reads as follows: "A ratification is not valid unless, at the time of ratifying the act done, the principal has power to confer authority for such an act."   That the county never had authority to authorize the treasurer to make such deposit of its funds is apparent and demonstrated sufficiently by [8] what has been said heretofore.   Again, we think the county cannot be bound by the wrongful act of its treasurer, even though the county commissioners or the state examiner, or all of these officers, interposed no objection to the course of conduct [9] which he pursued.   And it is immaterial that the treasurer was following a custom which prevailed before his term of office commenced, if indeed such was the fact.   (*Silver Bow County* v. *Davies,* 40 Mont. 418, 107 Pac. 81.)   Assuming that the treas-

urer was an agent of the county, his authority was limited, particularly was his authority in handling the county's funds [10] limited; and it is elementary that a principal is not estopped to repudiate the act of his agent having limited power, so far as those acts transcend his authority, unless the principal has by his course of conduct clothed the agent with ostensible authority to do the particular act. (Bigelow on Estoppel, 598.)

5. It is further contended that in order to constitute this excess deposit a trust fund, it is necessary that the county be able to identify it as among the assets of the defunct bank, and this is the general rule. The question remains, however, What is a sufficient identification? In case the trust property is [11] money which has been mingled with other funds, as in the present instance, it is not necessary that the *cestui que trust* shall be able to identify the particular pieces of money, for this would be impracticable, and in nearly every instance impossible; but it is sufficient that he be able to trace his funds either in the original or substituted form. (*Frelinghuysen* v. *Nugent,* 36 Fed. 229; *Farmers' etc. Nat. Bank* v. *King,* 57 Pa. 202, 98 Am. Dec. 215; *Van Alen* v. *Bank,* 52 N. Y. 1; *Frith* v. *Cartland,* 2 Hem. & M. 420; s. c., 71 English Reprint, 525; *Peters* v. *Bain,* 133 U. S. 670, 33 L. Ed. 696, 10 Sup. Ct. Rep. 354; *National Bank* v. *Insurance Co.,* 104 U. S. 54, 26 L. Ed. 693; 39 Cyc. 536.) The record before us shows sufficiently that this excess deposit was mingled with the other funds of the bank, became a part of such funds, and enhanced the apparent value of the bank's total assets, and in this we think the identification sufficient.

6. It is insisted, however, that if a trust be declared, it cannot extend further than the funds actually in the possession of the [12] bank at the time it suspended, as distinguished from its funds held in correspondent banks. But this contention cannot be sustained in the face of the agreed statement of facts, paragraph 5 of which reads as follows: ''That all sums of money so deposited by said county treasurer were, when so deposited, commingled with the funds of said bank and used by it in the transaction of its business, the same as the funds of general

depositors, all of which was at all of said times known to said Whitney.''. The recital that the county funds were ''commingled with the funds of said bank'' cannot be given any other meaning than that such county funds were commingled with all the funds of the bank. The expression, ''the funds of said bank,'' means all the funds of the bank, and since the deposits in the correspondent banks constituted portions of this bank's funds, the recital must be held to mean that the county funds were mingled with the funds comprising each of these several deposits.

7. The rule is now quite well established that when trust funds are mingled with private funds, the entire mixed fund will be [13] impressed with the trust to the extent of the trust funds, except in so far as the owner of the private funds may be able to distinguish and separate his own from the trust funds. (39 Cyc. 538.) Since neither the defunct bank nor the receiver is shown to be able to make such segregation, the entire funds coming into the hands of the receiver by virtue of his office must be held impressed with the trust in favor of the county, to the extent of the $20,500 excess deposit.

The trial court essayed to make findings of fact in this case; but it is the rule in this state that the agreed statement of facts [14] constitutes the findings of fact (*Jenkins* v. *Newman,* 39 Mont. 77, 101 Pac. 625), and the province of the court, therefore, was to draw legal conclusions from such facts alone, since those facts were not supplemented by others adduced from evidence so far as the record discloses. In other words, by submitting this agreed statement, the parties consented that the facts therein disclosed constituted all the facts pertinent to a decision of this controversy.

The decree of the district court should determine that the funds of the county to the extent of $20,500 constitute a trust fund in the hands of the receiver, to which the county is entitled in preference to general creditors of the bank, and that the $12,500 secured constituted a general deposit, and to that extent the county is a general creditor of the bank, entitled to participate with other general creditors.

The decree of the district court is reversed and the cause is remanded, with directions that a decree be entered as herein indicated.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SMITH: I concur in the result.