RYAN, Appellant, v. STAGG et al., Respondents.

(No. 6,737.)

(Submitted March 6, 1931. Decided April 1, 1931.)

[298 Pac. 353.]

*Mr. T. P. Stewart,* for Appellant, submitted a brief and argued the cause orally.

*Mr. S. P. Wilson* and *Mr. J. B. C. Knight,* for Respondents, submitted a brief; *Mr. Wilson* argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

J. P. Stagg died testate on June 16, 1927, and J. B. Gnose was appointed executor of his estate. Gnose employed H. J. Sannan, who acted as business manager of the estate, conducted the Stagg furniture and hardware business, leased and rented property, collected rentals and generally managed the estate's business.

On September 3, 1927, Sannan rented to plaintiff premises owned by the estate and required the deposit of the sum of $400 as a guaranty that the premises would not be used for unlawful purposes. The receipt given by Sannan recites: "And the $400 to be held as a pledge that said premises will not be used for any purpose contrary to the law of the state of Montana, or the United States. That in the event that said premises should be used for any purpose contrary to said laws, and as a result, said premises are abated by any court of the state or the United States, then the said James Ryan forfeits the above sum of $400 which is to be considered rent for the time that said premises are under abatement." The $400 as well as rentals paid by Ryan were

deposited by Sannan to the credit of the estate and were handled as other funds of the estate.

On October 27, 1928, a decree of distribution was made and entered, under the terms of which the property rented to plaintiff passed to John A. Stagg. After the payment of specific legacies the residue of the estate, consisting of property of a value greatly in excess of the pledged money passed to defendants in equal shares. The executor was discharged. December 1, 1928. From September 3, 1927, to October 1, 1928, the agreed monthly rental was paid by plaintiff to Sannan. The rental due November 1 was paid to John A Stagg. Soon after November 1 John A. Stagg advised plaintiff that he would be required to put up another bond instead of the one given to the estate. The premises not having been abated, plaintiff made demand upon the executor and defendants for the return of the money pledged. The estate having been distributed, the executor could not make return, and the defendants could not agree among themselves who should make payment to plaintiff.

This action was brought by plaintiff against defendants as residuary legatees and devisees under the will of J. P. Stagg, deceased, to recover the sum of $400, with interest thereon from November 1, 1928. Trial before the court, without a jury, resulted in judgment for defendants, and plaintiff appeals.

The determinative question presented for our consideration is whether defendants are liable for the money pledged to the Stagg estate.

The transaction in question amounted to a pledge (secs. 8292, 8293, Rev. Codes 1921; *Leggat* v. *Palmer*, 39 Mont. 302, 102 Pac. 327) to protect the estate against the abatement of the property rented, for violations of law. Legal title to the money remained in plaintiff (*Leggat* v. *Palmer*, supra; *Averill Machinery Co.* v. *Bain*, 50 Mont. 512, 148 Pac. 334; 21 R. C. L. 649; 21 Cal. Jur. 324, 328), and the estate was entitled to its possession until the obligation for which it was pledged was

discharged. Title did not pass to the estate and could not do so unless the premises were abated,—a contingency which never occurred. The record discloses that when title to the rented premises passed to John A. Stagg, the assets of the estate had been distributed and the executor discharged; the premises had not been abated, and, as a consequence, the obligation for which the pledge was made was satisfied, and plaintiff was entitled to the return of the pledged money. (*Averill Machinery Co.* v. *Bain*, supra; *Seanor* v. *McLaughlin*, 165 Pa. St. 150, 32 L. R. A. 467, 30 Atl. 717.) This was not done for the reason that it had been deposited and mingled with other funds to the credit of the estate, and, as stated, all of the assets had been distributed by order of court.

The pledged money was never a part of the assets of the estate, although treated as such by the executor and the court. It was mingled with the other funds of the estate, became a part of such funds, and enhanced the apparent value of the estate's total assets, and upon distribution, defendants, as residuary legatees and devisees, benefited to the extent of the pledge.

In legal effect the pledged money constituted a trust fund (*Hudgens* v. *Chamberlain*, 161 Cal. 710, 120 Pac. 422; *Sparks* v. *Caldwell*, 157 Cal. 401, 108 Pac. 276; *German-American State Bank* v. *Spokane-Columbia R. R. & Nav. Co.*, 49 Wash. 359, 95 Pac. 261), and when the trust funds were mingled with the estate's funds, the entire mixed fund became impressed with the trust to the extent of the trust fund (*Yellowstone County* v. *First Trust & Savings Bank*, 46 Mont. 439, 128 Pac. 596), except in so far as the estate funds could be distinguished and separated from the trust fund. (39 Cyc. 538.) Since defendants did not attempt to make any segregation, the entire funds of the estate must be held impressed with the trust in favor of plaintiff. By reason of the mingling of the funds the apparent assets of the estate were enhanced and upon distribution of the estate defendants, as residuary legatees and devisees of the estate, received the

trust fund—money belonging to the plaintiff—to which they were not entitled, and are liable to plaintiff for the money pledged.

"Every person to whom property is transferred in violation of a trust holds the same as an involuntary trustee under such trust, unless he purchased it in good faith, and for a valuable consideration." (Sec. 7900, Rev. Codes 1921.) Here the pledged property was transferred to defendants in violation of the trust; they are not purchasers in good faith for a valuable consideration and must make restitution to plaintiff.

For the reasons given, the judgment is reversed and the cause remanded to the district court of Deer Lodge county, with direction to enter judgment for plaintiff.

Mr. Chief Justice Callaway and Associate Justices Galen, Angstman and Matthews concur.