REICHERT *v*. UNITED SAVINGS BANK.

1. TRUSTS—PUBLIC FUNDS ILLEGALLY DEPOSITED.
   Public funds received by bank with knowledge, actual or constructive, that essential statutory requirements for deposit thereof have not been complied with, are impressed with trust *ex maleficio*, if they can be traced.

2. SAME—UNLAWFUL ACT OF PUBLIC OFFICER—RATIFICATION—ESTOPPEL.
   That public officer is party to wrongful act of making unlawful deposit of public funds does not benefit depository which is also knowing participant in unlawful transaction; as against owner of public funds · it neither constitutes ratification nor works estoppel.

3. SAME—NECESSARY ELEMENTS TO RIGHT OF PREFERENCE—IDENTITY OF TRUST FUNDS.
   Right to preference on theory of trust fund necessitates satisfactory proof of both existence of trust relation and identity of trust fund itself or specific property in which it has been invested.

4. BANKS AND BANKING—WHAT CONSTITUTES CASH ON HAND.
   Bank's cash on deposit in solvent correspondent banks is considered as cash in its vaults, in absence of showing that it was not subject to immediate withdrawal.

5. TRUSTS—TRUST FUND PRESUMED PART OF CASH ON HAND.
   In absence of showing that cash in bank's possession, including its deposits in solvent correspondent banks, has been less than amount of trust funds deposited therein, it will be presumed that said trust funds are part and parcel of said cash in bank's possession at time it became insolvent.

6. SAME—SCHOOL FUNDS ILLEGALLY DEPOSITED—PREFERENCE.
   Illegal deposits of public funds by treasurer of school district in bank having notice thereof, which becomes insolvent, are trust funds entitled to preference.

On claim of preference of special or trust deposit out of funds of insolvent bank, see annotation in 1 L. R. A. (N. S.) 252.

7. SAME—CASH ON HAND SUBJECT TO PAYMENT OF TRUST FUND—
INSOLVENCY.
   Cash balance of bank at time it became insolvent which is sub-
   ject to satisfaction of school moneys constituting trust fund
   includes cash in vaults of insolvent bank and its cash deposits
   in other solvent banks at time it closed.

Certified question to Lenawee; Rathbun (George
A.), J. Submitted November 27, 1931. (Calendar
No. 36,217.) Decided December 8, 1931.

Petition by Rudolph E. Reichert, State Banking
Commissioner, against United Savings Bank, a
Michigan corporation, for appointment of receiver.
Ridgeway School District No. 1, Fractional, Lena-
wee county, and four other school districts inter-
vened to impress a trust upon certain assets. Ques-
tions relative to trust nature of certain assets certi-
fied to this court under Michigan Court Rule No. 78.

*Paul W. Voorhies,* Attorney General, *Wendell
Brown, Arthur E. Kidder,* and *Hugh E. Wilson,* As-
sistants Attorney General, for interveners.

*Glenn L. Williams,* for receiver.

NORTH, J. The United Savings Bank of Tecumseh
became insolvent and was closed by the Michigan
banking commissioner. A receiver has been ap-
pointed. Five school districts were depositors in the
insolvent bank. Each of these school districts has
intervened in the receivership proceedings and seeks
to have its deposit in the bank adjudicated a trust
fund to be given preference in payment as against
claims of general creditors. In each instance the
school treasurer made the deposit in the name of the
school district, and the money when received by the

bank was known to be school funds. Each of these five school districts in accordance with the statutory provision (2 Comp. Laws 1929, § 7113) designated the defendant bank or a predecessor which has been merged into defendant bank as the depository of its school money. The bank did not give a depository bond incident to any of these school accounts. In some instances such a bond was not requested by the school treasurer; and in cases where a bond was requested it was refused. Thus it appears that each deposit was made by the treasurer and accepted by the bank in direct violation of the statutory provisions:

"If the treasurer shall deposit the money in any bank or trust company authorized to do business in this State, such deposit shall be made in his name as treasurer of the district. * * * No bank or depository shall receive a larger deposit of said funds than the amount of the bond as hereinafter provided, * * * and such bank or banks shall give good and sufficient bond to be approved by the district board conditioned for the receipt, safekeeping, and payment of all money which may come into its custody, in the amount designated as the penalty in the bond furnished by the district treasurer to the district. It shall be the duty of the treasurer of said district to see that a sum in excess of the amount of bond is not deposited in such bank or banks, and said treasurer and his bondsmen shall be liable for only such loss occasioned by deposits in excess of the amount of such bond." 2 Comp. Laws 1929, § 7112.

There are many authorities which hold that the unauthorized or unlawful deposit of public funds in a bank knowing them to be public funds and which later becomes insolvent creates a trust relationship in such funds between its owner and the bank.

"Public funds, received by a bank with knowledge, actual or constructive, that the essential statutory requirements for the deposit thereof have not been complied with, are impressed with a trust *ex maleficio,* if they can be traced." *In re North Missouri Trust Co.* (Mo. App.), 39 S. W. (2d) 415.

"But if the (public) funds have been deposited in violation of law or without authority, the claim of the government is preferred. The basis of this rule is that a trust results from the wrongful disposition of the funds." 22 R. C. L. p. 230, citing cases.

We will neither cite nor review the numerous other cognate authorities. They will be found in the comprehensive notes published in 51 A. L. R. 1342 and 65 A. L. R. 693. See, also, 7 C. J. p. 749, note 57. Michigan is committed to the above quoted holding. *Fire & Water Com'rs* v. *Wilkinson,* 119 Mich. 655, 665 (44 L. R. A. 493); *American Employers Insurance Co.* v. *Maynard,* 247 Mich. 638.

In opposing interveners' claims for preference, the receiver contends in his brief that, since in making these deposits the school treasurers as well as the bank violated the statute, "the treasurer and not the bank would be the one chargeable with the possession of public moneys as trust funds." Such a conclusion would be entirely contrary to the theory underlying the holding that an unlawful deposit of public funds knowingly received creates a trust *ex maleficio* in the hands of the depository. The theory is that it is contrary to public policy to permit a public officer or agent to divest the public of its title to its funds by making an unlawful deposit thereof; that, when a deposit of public funds is made in violation of law, title does not pass to the bank, and if such funds can be traced or identified they will be restored to the lawful owner. To hold otherwise would not only defeat the whole theory of a trust *ex*

*maleficio* but would enable the actual possessor of the public funds so deposited to take advantage of his own wrong. The fact that the public officer is a party to the wrongful act of making an unlawful deposit of public funds does not benefit the depository which is also a knowing participant in the unlawful transaction. As against the owner of the public funds it neither constitutes a ratification nor works an estoppel. *Yellowstone County* v. *First Trust & Savings Bank,* 46 Mont. 439 (128 Pac. 596); *Crawford County Com'rs* v. *Strawn,* 84 C. C. A. (6th circuit) 553 (157 Fed. 49, 15 L. R. A. [N. S.] 1100).

"And the right to be preferred is not barred by the fact that the officer depositing the money had knowledge of the violation of the statute." 22 R. C. L. p. 230.

See, also, *Fire & Water Com'rs* v. *Wilkinson, supra.*

As above noted, the deposit of each of the five intervening school districts constitutes a trust fund in the hands of the insolvent bank. But the school districts are not entitled to preference over other depositors unless their respective trust funds can be traced and identified as part of the assets now in the hands of the receiver of the insolvent bank. The right to a preference on the theory of a trust fund necessitates satisfactory proof of both (1) the existence of the trust relation and (2) identity of the trust fund itself or the specific property in which it has been invested. We forego citation of decisions from other jurisdictions (see note 51 A. L. R. 1340) because this court is definitely committed on this proposition.

"The theory upon which property is taken from a receiver, and paid to a beneficiary, is that the court

is able to find in the hands of the receiver property, or its proceeds, which was held by the insolvent, not in his own absolute right, but charged with a trust. In such a case a court of equity will hold that it is not subject to the claims of other creditors. But when the fund received in trust has been dissipated so that it cannot be traced into some other specific property or fund, the only remedy of the beneficiary is to share equally with other creditors.'' *Fire & Water Com'rs* v. *Wilkinson, supra,* 662.

See, also, *American Employers Insurance Co.* v. *Maynard, supra.*

On this phase of the instant case the following facts are pertinent: At the time the receiver took possession the defendant bank had cash in its own vaults to the amount of $9,348.90. It had on deposit in solvent correspondent banks $73,285.07. Public funds then on deposit in defendant bank amounted to $71,757.21. Of this amount $33,149.74 was in the possession of the defendant bank without its having given a depository bond. The receiver of the defendant bank contends that in case these five interveners or others who have deposits of like character are entitled to a preference, they have a right to look for such preference payments only to the cash actually in the vaults of the defendant bank at the time the receiver took possession. Without stressing the claim that they have a right to look to the general assets of the bank, it is urged in behalf of the interveners that since their deposits (presumably cash) went into defendant's possession, thereby increasing its cash assets, they have a right to enforce a preference payment not only against the cash found by the receiver in the vaults of defendant bank, but also the cash which defendant at the time it suspended had on deposit in correspondent banks. It

is obvious that the funds deposited by the United Savings Bank in other solvent banks were and now are subject to withdrawal and restoration to actual possession of the defendant bank. Had they been so withdrawn the day before the receiver was appointed, he would have found in the actual possession of the defendant bank cash in an amount sufficient to cover interveners' claims. No claim is made that the total of defendant's cash on hand and its deposits in correspondent banks has been less than the amount of interveners' deposits since receipt of the same. Therefore, we think it should be held that the cash on deposit in the correspondent banks should be considered the same as cash in defendant's vaults. If an action of this character were prosecuted against an individual, he would not be heard to say that the plaintiff's funds held in trust by him could not be traced or found in his possession simply because he had them deposited in his bank account. We know of no reason for applying a different test or coming to a different conclusion as to money of an insolvent bank on deposit in a correspondent bank. The deposited funds of these five intervening school districts totaling $10,711.55 increased the cash assets of the defendant bank by that amount. Where, as in this case, there is an absence of showing to the contrary, presumably these trust funds so deposited are part and parcel of the larger amount, $82,633.97 cash, in defendant's own possession or on deposit to its credit in correspondent banks at the time the receiver was appointed. *American Employers Insurance Co.* v. *Maynard, supra.*

There is a conflict of authority as to whether preferred claims are payable only out of cash actually in the insolvent bank at the time it suspended or whether its cash deposits in other banks can also

be reached. As above indicated, we think it is of no consequence whether the insolvent bank is holding the money in its own vaults or has it on deposit in other banks. Such is the holding in *Yellowstone County* v. *First Trust & Savings Bank, supra.* The syllabus in the Pacific Reporter reads:

"Where a bank receiving a deposit of county funds without giving the statutory bond therefor thereby became a trustee for the county for the amount of the deposit, the county, on the insolvency of the bank, which had commingled the money deposited with its funds and used it in its business as the funds of general depositors, could follow the funds not only in the actual possession of the bank at the time it suspended, but also the funds held in correspondent banks, the expression 'the funds of a bank' meaning all its funds, including deposits in correspondent banks."

The holding is to the same effect in *People* v. *Auburn State Bank,* 215 Ill. App. 133, where the court said:

"Whatever amount the trustee has in his possession must constitute the trust fund, whether such sum may be in one place or another as to physical location. We fail to see how the mere fact that the bank had its moneys in different places could change the character of the trust fund."

A like holding will be found in *People* v. *Iuka State Bank,* 229 Ill. App. 4. Certiorari denied by the Illinois Supreme Court. 231 Ill. App. xxxiv.

In a case wherein the record may be said to contain some evidence of the identity of the fund, we have recently held that the trust fund may be reached though it is in the possession of a depository

of the insolvent bank.  *Reichert* v. *Midland County Savings Bank,* 254 Mich. 551.

Perhaps the leading case wherein a contrary holding is made is *Crawford County Com'rs* v. *Strawn,* *supra.*  The case is also reported in 15 L. R. A. (N. S.) 1100.  We quote the fourth paragraph of the L. R. A. syllabus:

"Trust funds blended with general moneys of an insolvent bank cannot be identified in the shifting balances carried in reserve or in correspondent banks, made up of collections and proceeds of rediscounts, and sometimes of funds remitted by the insolvent bank, where the trust fund is not traced to any of the rediscounts or collections; the presumption as to the funds remitted being that they were not trust funds."

As may be inferred from the above quotation, Justice Lurton in arriving at the conclusion above indicated seems to have been influenced, if not controlled, by the record before him from which it appeared that "The balances with these several (correspondent) banks were shifting from day to day;" and further, that "the credits given to the (insolvent) bank are shown to have sometimes come from collections, * * * sometimes from moneys sent from the vaults of the (insolvent) bank to these reserve or correspondent banks."  No such showing appears in the record in the instant case.  The *Strawn Case* is quoted and followed in a later Federal case.  See *First National Bank* v. *Fidelity & Deposit Co.,* 48 Fed. (2d) 585 (C. C. A. 9th circuit).  Also the supreme court of Iowa is committed to the doctrine announced in the *Strawn Case.*  *Andrew* v. *Winnebago County State Bank,* 208 Iowa, 392 (226 N. W. 73), citing earlier Iowa cases.  See, also,

*In re American Savings Bank of Marengo,* 210 Iowa, 568 (231 N. W. 311).

Decision in the instant case is on the trust-fund theory, and we are not at all concerned with or passing upon the sovereign prerogative doctrine. Our present holding is bottomed on the proposition that cash on deposit in a solvent correspondent bank, in the absence of a showing to the contrary, is presumed to be held subject to the control of the depositor, including the right to immediate possession, and is therefore constructively in the possession of the depositor. Thus viewed the defendant bank had possession of cash at the time the receiver was appointed in excess of the total amount as to which a preference is claimed by interveners. Presumably this cash in the possession of the defendant bank included the trust funds, and they should be repaid therefrom. In this view of the case we may quote with approval:

"It is not important that the plaintiffs' money bore no mark, and cannot be identified. It is sufficient to trace it into the bank's vaults and find that a sum equal to it (and presumably representing it) continuously remained there until the receiver took it. The modern rules of equity require no more." *Massey* v. *Fisher,* 62 Fed. 958.

This case was submitted on five certified questions (Rule No. 78, Michigan Court Rules 1931). Each question has to do with school funds illegally deposited. None of them involve the question of public funds lawfully deposited; as to which see *Board of Education* v. *Union Trust Co.,* 136 Mich. 454. Also *Retan* v. *Union Trust Co.,* 134 Mich. 1. The instant case is fully controlled by considera-

tion and disposition of only these two certified questions:

(1)  Are illegal deposits of public funds by the treasurer of a school district in a bank having notice thereof and which becomes insolvent, trust funds?

(2)  If there is a preference, would the satisfaction of the preference of the school district be limited to the cash balance of said bank and such other items to which said funds can be directly traced?

Question one is answered in the affirmative. Question two is also answered in the affirmative, but with the provision that "the cash balance" includes both the cash in the vaults of the insolvent bank and its cash deposits in other solvent banks at the time it closed.

The disposition herein made of these interveners' rights is subject to actual payment being withheld by the receiver until it can be ascertained whether there are other preferred claims and determination of whether the total of such claims exceeds the cash balance of the defendant bank when the receiver was appointed. The interveners will have costs against the receiver in this court; and the case is remanded to the trial court for further proceedings.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.