INTERCOLLEGIATE ALUMNI CLUB *v.* KIRCHNER.

1. BANKS AND BANKING—PREFERENCE—TRUSTS—ESTOPPEL.

   In suit by nonprofit corporation to establish preference as to its deposit with trust company pursuant to agreement to pay interest thereon and have the right to invest such fund, subject to sole approval and responsibility of depositor's board of governors, notwithstanding depositor did not consent to reorganization of trust company by use of fund into which depositor's money had been placed, depositor cannot claim relief other than pursuant to decree embodying the plan of reorganization where it brings suit thereunder.

2. SAME—COMMINGLED TRUST FUND—GENERAL CASH BALANCE.

   Depositor of trust fund commingled with trust company's general cash *held*, not entitled to preference where general cash balance of company was not at all times equal to or in excess of amount of deposit between time of commingling and close of business.

3. SAME—PREFERRED CLAIM—INSOLVENCY.

   One seeking to establish a preferred claim against an insolvent trust company is, in effect, asking recovery of his own property, not merely a liability or debt of the insolvent.

4. SAME—TRUSTS—DISSIPATION OF TRUST FUND.

   Property is taken from a receiver and paid to a beneficiary when the property or its proceeds held by the insolvent is charged with a trust but when the fund is not traceable or, if traceable, has been dissipated, the remedy of the beneficiary is to share equally with other creditors.

5. SAME—TRACING—EVIDENCE.

   In suit to establish preference against assets of insolvent trust company, record *held*, insufficient to permit tracing of depositor's fund into any specific assets.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 9, 1935. (Docket No. 58, Calendar No. 38,349.) Decided September 9, 1935.

Bill by Intercollegiate Alumni Club, a Michigan corporation, against George Kirchner, conservator of the Union Guardian Trust Company, a Michigan corporation, and Union Guardian Trust Company to impress a trust on funds in hands of the conservator and to declare a preference. W. H. L. Everard, Paul Jerome, and Hale Clark added as parties plaintiff. E. B. Finley, Jr., Millard E. Bowlus, and E. Arthur Edwards, as liquidating trustees, added as parties defendant. From decree denying preference to plaintiff club, plaintiffs appeal. Affirmed.

*Ernest P. LaJoie* and *Pear, Beattie & Langs* (*Donald K. Tyler,* of counsel), for plaintiffs.

*Shaeffer & Dahling,* for defendants trust company and its conservator.

*Lewis & Watkins* (*Edwin C. Lewis* and *Frederick W. Seitz,* of counsel), for defendants liquidating trustees.

EDWARD M. SHARPE, J. The Intercollegiate Alumni Club of Detroit, a nonprofit corporation, was organized in the fall of 1928 for the purpose of raising money to purchase a site for a club house and to build and furnish the same. The plan was to solicit memberships from college men, the cost of each membership being $200. The subscription agreement contained the following language "at least 75 per cent. of the membership fee will be placed in a trust fund for building purposes, subject to a vote of the members."

When the membership campaign was started, a committee was appointed to investigate and determine the proper institution in which to deposit the fee collected. The plan was discussed with officers

of the Guardian Trust Company and they were told the purpose of the fund and that 25 per cent. would be used for office expenses and 75 per cent. was to go into a building fund to be used for no other purpose.

The committee had in mind finding a depository whereby the funds would be available at any time as they contemplated going ahead with the building program within a reasonable time. The trust company offered to accept the funds and hold them in trust for the building project and pay a certain amount of interest. The offer was accepted and the following agreement entered into:

"It is agreed between the Intercollegiate Alumni Club, a Michigan corporation, and Guardian Trust Company of Detroit, of Detroit, Michigan, as follows:

"First: The said club intends to raise, through the sale of memberships in said club, approximately the sum of $1,000,000, of which sum 75 per cent. thereof is to be placed in a trust for purpose of acquiring a site, building and furnishing a clubhouse for its members; said trust fund to be held by said Guardian Trust Company of Detroit in trust for said club until such time as it is authorized by officers and directors of said club to expend or turn over said fund for said building purpose; provided that said building project shall have first been approved by a vote of the members of said club in accordance with its by-laws.

"Second: It is understood that membership fees in said club will be paid to said club and 25 per cent. of such membership fee will be retained by said club, out of which will be paid organization expenses and for other purposes in connection with said club (all records of membership and payments are to be kept by the club). The remaining 75 per cent. of membership fees, whether paid at once or in installments will be deposited by the treasurer of said club with

said Guardian Trust Company of Detroit to constitute the trust fund for building purposes as herein provided for.

"Third: Said Guardian Trust Company of Detroit shall hold all moneys in said building fund for building purposes only and no money shall be released by the said trust company excepting upon the written authorization of the officers of said club for building purposes. Provided, however, that if funds deposited in said building fund should by vote of the duly elected members of said club be ordered returned to the individual members, then the said club shall deposit with the trustee names and amounts owing to said individual members and repayment will be made by the trustee upon orders and directions of the officers and directors of said club.

"Fourth: It is agreed that the said trust company will allow interest at the rate of four per cent. per annum on monthly balances of any funds so lodged with it, provided, however, that all or any part of said funds may be invested at any time upon the recommendation of the investment committee of said trust company and with the sole approval and responsibility of the board of governors of said club in such securities as are suitable for trust funds of this nature.

"Fifth: This agreement and the trust herein created may be revoked at any time by said Intercollegiate Alumni Club upon a vote of three-fourths of all the directors or governors of said club, at a meeting specially called for that purpose in accordance with its by-laws."

The membership fees were paid directly to the club; the treasurer, in turn, deposited 75 per cent. of them with the defendant trust company. Each deposit slip contained the names of the members, their addresses, and the amount of each membership fee that was being deposited with defendant trust company which, in turn, forwarded to the club a monthly

statement showing the condition of the account. In March, 1930, the Guardian Trust Company and the Union Trust Company merged and became known as the Union Guardian Trust Company; and plaintiff club was notified of this fact. On December 15, 1932, the trust company notified plaintiff club that it could no longer pay the interest mentioned in the agreement. This, apparently, was the first time that plaintiff club knew that its funds had been invested by the trust company; and as a result of this notice the trust agreement was revoked on December 30, 1932.

February 11, 1933, was the last day that defendant company was open for business and on February 14, 1933, the banking holiday was declared by the governor. On March 23, 1933, a conservator was appointed of defendant company. At the close of business February 11, 1933, plaintiff had on deposit with defendant company $125,382.66 and interest accumulations of $13,210.50, making a total of $138,593.16. The record also shows that at the time of the merger of the two trust companies, the trust deposits were segregated into what were called class A and class B trusts. Plaintiffs' deposits were made a part of the class B trust and commingled with funds that came to the trust company with no trust relationships. This class of funds was also known as the earning account of the company, in which investments were made for the benefit of the trust company and not for the benefit of the trust. However, the plaintiff club at no time prior to the banking holiday knew of the segregation of their deposits into class B deposits. At the close of business February 11, 1933, there was a cash balance of $1,836,002.29 in the funds deposited in class B deposits and of this amount $800,000 was used to fur-

nish capital for the reorganized trust company which was later reorganized under the authority provided by Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933. In July, 1933, plaintiffs started suit against the conservator of defendant trust company in which the relief sought was to declare the club's money in the hands of defendant company to be a trust fund and to impress a lien on the assets in the hands of defendant corporation.

The record also discloses that on April 16, 1934, a decree was entered in an action instituted by the then attorney general of Michigan against the trust company in the circuit court of Wayne county. At the opening of the trial in the instant case on July 24, 1934, a petition was filed and an order entered the following day permitting Everard, Jerome, and Clark to intervene as parties plaintiff on behalf of themselves and other members of the club who might care to become parties plaintiff. Following the trial of the action instituted by the attorney general, a decree was entered fixing May 28, 1934, as the date when the plan of reorganization was to be effective; and pursuant to said plan E. B. Finley, Jr., Millard E. Bowlus and E. Arthur Edwards were appointed liquidating trustees of the trust company.

The decree also provided that: ''All liabilities of the company, of any nature whatsoever, not herein specifically allocated, including claims arising out of the fiduciary relationships of the company, shall be and hereby are allocated to 'depositors' and creditors' trust,' and the reorganized company shall in no wise be liable for any such claims,'' and that any proceedings in any court against the trust company on account of any alleged claim should be considered as a claim filed by said claimants under said decree and plan. The plan further provided that

general creditors, depositors and claimants should receive certificates of indebtedness in the amount of their claims, as evidence of their claims pending liquidation and distribution of the assets in the depositors' and creditors' trust. It is to be noted that at no time did plaintiff consent or acquiesce in this plan of reorganization, but in view of the fact that plaintiffs claim a preference under paragraph 4, subd. 9 of Judge Marschner's order, they cannot now be heard to deny that their remedy for any recovery is under any other than the plan of reorganization.

For the purpose of this opinion we may assume that the relationship between the plaintiff club and the defendant trust company was that of trustee and *cestui que trust*. The only question remaining is the right of plaintiff club to a preference in the liquidation of the assets of the trust company under the plan of reorganization. In the solution of this question we must have in mind that upon two occasions the balance in the general fund of the trust company was less than the amount of the trust fund as of those dates. On April 9, 1932, the balance in the general fund of the trust company was $103,051.42 and on May 10, 1932, it was $124,996.33. But, at the close of business February 11, 1933, the amount in the general fund was $1,836,002.29.

The plaintiffs contend that inasmuch as there were more than sufficient funds in the general fund to pay plaintiffs' claim and other trust obligations at the close of operations on February 11, 1933, they should be given a lien or·preference on said amount. On the other hand, the defendant trust company and liquidating trustees deny this claim, first, because the amount of the general fund fell below the amount of plaintiffs' deposit upon two different occasions between the time of making the initial deposit and

the close of the trust company's operations on February 11, 1933, second, because there may be other trusts having similar rights as plaintiff club the aggregate of which may be greater than the total balance in the general fund, and third, the general reorganization plan bars plaintiff from any relief except in accordance with the terms and provisions of said plan as set forth in the orders of the court.

In the case of *Reichert* v. *Fidelity Bank & Trust Co.*, 261 Mich. 107, we said on pages 114 and 115:

"Question 6.   Where claims are allowed as having a preference because funds were deposited with the insolvent as trust funds, either actual or constructive, which trust funds cannot be traced into any tangible assets unless by legal construction, and where the cash on hand at the time of closing is less than the total amount of such preferred claims, should these claims share *pro rata* in the cash on hand before general claims?

"The answer is, No.   A claim asserted on the theory that funds were placed in the hands of the insolvent in trust, either actual or constructive, cannot be successfully maintained as a preferred claim unless (1) such deposit or the proceeds of the investment * thereof can be traced and identified in the hands of the insolvent; or unless (2) from and after the commingling of such funds with the general cash of the insolvent the amount of cash on hand until cessation of business continued to be equal to or in excess of the aggregate of the untraceable trust claims asserted.   *American Employers Ins. Co.* v. *Maynard*, 247 Mich. 638; *Reichert* v. *United Savings Bank*, 255 Mich. 685 (82 A. L. R. 33).   The assumption embodied in the question excludes compliance with the first condition and the facts disclosed by

---

* In the report of the case of *Reichert* v. *Fidelity Bank & Trust Co.*, 261 Mich. 107, second and third lines from the bottom of page 114, the word "insolvent" should be "investment."—Reporter.

the record are conclusive of noncompliance with the second."

In the case at bar the plaintiffs are asking for relief (or preference) upon the theory of "tracing."

"The term 'preference' or 'preferred claim' although frequently used, is, as heretofore suggested, a misnomer. The real foundation of this proceeding is that Mrs. Huhn is asking a recovery of her own property." *Andrew* v. *Peoples Savings Bank of Nevada*, 209 Iowa, 1147 (229 N. W. 907).

The proper theory of recovery in cases similar to the instant one was well stated in *Leach* v. *Iowa State Savings Bank*, 204 Iowa, 497, 506 (212 N. W. 748, 215 N. W. 728):

"So-called claims of preference of the character of those involved in this case may not be allowed merely as for a liability or debt of the insolvent's. A liability for trust property misappropriated or lost is not entitled to a preference. The right to preference consists in the right of property in assets in the possession of the receiver, but equitably belonging to claimant, and not belonging to the bank. The claimant is in the attitude of pursuing his own property. He may pursue it into different forms of property, if it is shown that it had been converted into such. But his right ultimately is to recover his own property, not to recover a debt or liability for his property."

In *Reichert* v. *United Savings Bank*, 255 Mich. 685 (82 A. L. R. 33), we said:

"As above noted, the deposit of each of the five intervening school districts constitutes a trust fund in the hands of the insolvent bank. But the school districts are not entitled to preference over other depositors unless their respective trust funds can be traced and identified as part of the assets now in

the hands of the receiver of the insolvent bank.  The right to a preference on the thory of a trust fund necessitates satisfactory proof of both (1) the existence of the trust relation and (2) identity of the trust fund itself or the specific property in which it has been invested.''

''The *cestui* or successor trustee who is seeking to follow trust funds should convince the court that the bonds, bank account, stock, realty, or other property, which the complainant desires to take from the hands of a defaulting trustee or another not a *bona fide* purchaser, either is part or all of the original trust property, or is property which has been produced by the original trust *res* through sale, barter, reinvestment, or some other process.''     4 Bogert, Law of Trusts and Trustees, p. 2653.

Michigan has chosen this interpretation of the theory of tracing and has definitely declared its stand in *Board of Fire & Water Com'rs of Marquette* v. *Wilkinson*, 119 Mich. 655, 662 (44 L. R. A. 493):

''The theory upon which property is taken from a receiver, and paid to a beneficiary, is that the court is able to find in the hands of the receiver property, or its proceeds, which was held by the insolvent, not in his own right, but charged with a trust.  In such a case a court of equity will hold that it is not subject to the claims of other creditors. But when the fund received in trust has been dissipated, so that it cannot be traced into some other specific property or fund, the only remedy of the beneficiary is to share equally with other creditors.''

See, also, 4 Bogert, Law of Trusts and Trustees, p. 2653; annotation in 82 A. L. R. 52; 30 Michigan Law Review, 441; 13 Minnesota Law Review, 39.

There is no dispute about the fact that it is impossible to actually trace the plaintiffs' fund in the

instant case and the record does not contain sufficient facts to determine what money was used to acquire any specific pieces of commercial paper or other assets of the trust company.

Under the ruling laid down in *Reichert* v. *Fidelity Bank & Trust Co., supra,* as found on pages 114 and 115, the fund cannot be followed and a lien impressed upon the general fund of the trust company.

The decree of the lower court is affirmed, with costs to defendant.

Potter, C. J., and Nelson Sharpe, North, Fead, and Wiest, JJ., concurred. Butzel and Bushnell, JJ., did not sit.